### Sherry L. DUNNING

v.

### John Lee DUNNING.

Supreme Judicial Court of Maine.

Argued June 7, 1985.

Decided July 15, 1985.

---

Morrill & Associates by Allison C. Morrill (orally), Portland, for plaintiff.

Kettle, Carter, Klein, Henegar & Levandoski by Dennis Levandoski (orally), Donald Carter, Portland, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE, WATHEN and GLASSMAN, JJ.

McKUSICK, Chief Justice.

Plaintiff Sherry L. Dunning appeals the judgment of the District Court (Portland) granting her a divorce from John Lee Dunning, but awarding her no alimony or attorney's fees. The judgment granted the wife custody of the couple's two minor children and ownership of the family home. The husband was to pay $100 per week per child in child support, as well as the medical, optical, and dental expenses of the children. The wife contests the divorce court's denial of alimony and attorney's fees and its denial of her motion to stay enforcement of the judgment pending appeal. Her appeal on those grounds to the

Superior Court (Cumberland County) proved of no avail. On her further appeal to this court, we find that the denial of alimony was predicated upon a clearly erroneous factual finding in the District Court,[1] and therefore we vacate those parts of the judgment deciding alimony and related financial issues and remand for further proceedings.

The Dunnings married on January 22, 1966, in Washington, D.C., while both were in the Navy. They lived together in Maine from 1967 until November of 1982, when they separated. Some ten years ago, the wife began having physical and psychiatric problems that involved an anxiety disorder manifested by nervousness, frequent headaches, stomachaches, and nausea. Those difficulties culminated in 1976, when her agoraphobia prevented her even from stepping outside of the family home. Since then, she has had regular medical and psychiatric treatment for her condition, and has made considerable progress in combatting her disability. However, at the time of the divorce hearing on July 2, 1984, she still suffered daily migraine headaches, which according to her psychiatrist were "really incapacitating" to her. Her therapy currently was directed toward finding a treatment that would make her headaches tolerable, so as to enable her to function normally.

## I.

 The District Court, in its discussion of the relative earning capacities of the parties, made a specific finding of fact that "[t]he [wife] is well able to work, but has had little earnings in recent years, and although able to provide for herself, would not be able to make much contribution toward the support of the children." That factual determination was critical to the court's denial of any alimony to the wife, and may well have affected its decision on the other financial issues that were in con-test between the spouses. The Law Court will set aside a trial court's finding of fact only if it was clearly erroneous under the highly deferential standard explicated in *Harmon v. Emerson*, 425 A.2d 978, 981–82 (Me.1981). Applying that standard to the case at bar, we conclude that the District Court's finding that Mrs. Dunning "is well able to work ... and ... able to provide for herself" was indeed clearly erroneous and must be set aside.

Admittedly, this is not a case where there is no competent evidence at all that could be said to show the wife's ability to earn something outside the home. There was testimony at trial that she, apart from her physical and mental problems, had the requisite skills to perform certain minimum wage jobs. But her possession of skills alone does not justify a finding that she was able to work and fully support herself. There was extensive testimony from both of the wife's personal physicians, one of them a psychiatrist, that her daily migraine headaches, which could last all day and could also occur at night, were incapacitating to her to such an extent that she could not concentrate, had to retire from noise and light, felt nauseous, and was unable to eat. Any additional stress in her environment, such as that from a job, would likely exacerbate her condition. The wife herself testified that her headaches could keep her in bed for three or four days at a time. The last time the wife had held a part-time job for a few weeks, her condition deteriorated so much that she had to spend two weeks in the hospital, despite the fact that she enjoyed the job and got along well with her co-workers. Both physicians testified that because of her physical and mental problems, the wife was presently unable to work even part-time, and neither could predict whether or when she would make sufficient progress in combatting those problems to enable her to return to work.

1. We examine the proceedings in District Court as though on initial appellate review, giving no weight to the determination made by the Superi-or Court on the intermediate review by that court. *See Williams v. Williams*, 444 A.2d 977, 978 (Me.1982).

The fact that the wife worked prior to her 1966 marriage and for about a year part-time in the early 1970's does not support the finding that she is currently able to work, for the simple reason that that limited employment predated her serious medical difficulties. Nor can the fact that she apparently performs housework and household repairs be taken, in her situation, as an indication that she is mentally and physically capable of successfully earning her livelihood regularly in the outside workplace.

This case presents the exact situation contemplated by the classic formulation of the "clearly erroneous" test in *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948):

> A finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.

In the words of *Nee v. Linwood Securities Co.*, 174 F.2d 434, 437 (8th Cir.1949), quoted with approval in *Harmon v. Emerson*, 425 A.2d at 981–82, this record contains "[s]uch evidentiary weight" and it has led us to "such convictional certainty" that we do "not feel able to escape the view that the trial court has failed to make a sound survey of or to accord the proper effect to all of the cogent facts, giving due regard, of course, to the trial court's appraisal of witness credibility where that factor is involved." We acknowledge the exclusive role of the trial court to decide whom to believe and how much to believe, even as to expert medical witnesses. We also recognize that it could draw reasonable inferences about the general earning capacity of plaintiff, a woman of 38, from her courtroom testimony and general demeanor. We can conceive that the divorce court

could have rationally concluded that the wife might be able to earn some part of her necessary support. We cannot, however, see any possible basis in the evidence for its finding that the wife at the time of judgment was able to provide 100% of her own needs. That critical finding was clearly erroneous and cannot stand.

## II.

■■ As a consequence of our holding that the divorce court committed clear error in finding that the wife after divorce could entirely provide her own support, we must vacate the part of the judgment that denied her any alimony, and remand for a new determination on that issue. At the same time, the divorce court must reexamine its ruling denying the wife any attorney's fees. We cannot say that it is highly probable that that ruling was not affected by the clearly erroneous finding of the wife's potential earnings. *See State v. True*, 438 A.2d 460, 467 (Me.1981) ("harmless error" test). Furthermore, on remand the divorce court must reexamine the division of marital property in light of whatever alimony is ordered for the wife, in order that equity be done to both parties by the overall financial result of the divorce. *See Bagley v. Bagley*, 415 A.2d 1080, 1083 (Me. 1980); *Young v. Young*, 329 A.2d 386, 392 (Me.1974). The District Court on remand should direct its effort toward an appropriate resolution of the reopened financial issues as of the date of the divorce judgment, July 2, 1984. The court shall make its redeterminations on the basis of the record existing on that date.[2]

The entry is:

Judgment vacated as it relates to the division of property and liabilities, to alimony, and to attorney's fees; affirmed in all other respects.

---

2. Any subsequent modification of the alimony or other support provisions of the divorce judgment ultimately entered after remand should be on proper motion based on change of circumstances after July 21, 1984. *See Friedly v. Fried-* ly, 174 Conn. 249, 386 A.2d 236 (1978); *Seeberg v. Seeberg*, 50 App.Div.2d 713, 374 N.Y.S.2d 881 (1975) (mem.). *See generally* 2 Field, McKusick & Wroth, *Maine Civil Practice* § 80.4 (2d ed. 1970); Annot., 18 A.L.R.2d 13, 16–20 (1951).

Remanded to the Superior Court with directions to remand to the District Court for further proceedings consistent with the opinion herein.

All concurring.