CITY OF AUBURN

v.

**Harvey DESGROSSEILLIERS and Rachel Desgrosseilliers.**

Supreme Judicial Court of Maine.

Argued May 31, 1990.

Decided July 16, 1990.

Curtis Webber (orally), Linnell, Choate & Webber, Auburn, for City of Auburn.

Robert S. Hark (orally), Isaacson & Raymond, Lewiston, for Harvey and Rachel Desgrosseilliers.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN and COLLINS, JJ.

COLLINS, Justice.

In an enforcement proceeding initiated by the City of Auburn, the District Court (Lewiston, *Scales, A.R.J.*) entered a judgment finding that Harvey and Rachel Desgrosseilliers had violated Auburn's zoning ordinance by operating a commercial landscaping service and a retail tree and plant nursery business in a General Business zoning district. On the Desgrosseilliers' appeal from the District Court's judgment, the Superior Court (Androscoggin County, *Alexander, J.*) determined that the City was equitably estopped from bringing this enforcement procedure against the Desgrosseilliers. The Superior Court therefore vacated the District Court's judgment. The City of Auburn now brings this timely appeal from the Superior Court's judgment.

I.

The Desgrosseilliers presently operate a multi-business operation in Auburn consisting of a gift shop, a photographic studio, a landscaping business, and a retail plant and tree nursery. In June, 1985, the Desgrosseilliers met with James McPhee, a city official,[1] to discuss their intention to begin this multi-business operation. McPhee told the Desgrosseilliers that if they wished to be able to operate these businesses under the Auburn zoning ordinance they needed to change the zoning district in which the Desgrosseilliers' proposed business site was located from an Urban Residence zoning district to a General Business zoning district. McPhee helped the Desgrosseilliers draw up a petition form to change the zoning district. On cross examination at trial, McPhee admitted that his "interpreta-

---

**1.** James McPhee's position with the City when the Desgrosseilliers first met with him in 1985 was not clearly established by the evidence. The evidence shows that McPhee was first employed as a Zoning Enforcement Officer in 1979, was promoted to Assistant Planner in 1981, and was at the time of the trial on January 23, 1989, the Director of Land Use Planning and Enforcement.

tion has consistently been since 1983 that neither landscaping services nor a retail sales nursery" were permitted in a General Business zoning district. Nevertheless, McPhee admitted that he neither presented this problem to the Desgrosseilliers nor raised it before either the Auburn Planning Board or the City Council.

The Desgrosseilliers presented their petition to change the zoning district to the Auburn Planning Board and the Auburn City Council, each time disclosing the fact that they intended to operate both a landscaping service and a plant and tree nursery in the zoning district being considered. Neither the Planning Board nor the City Council raised the issue whether the Desgrosseilliers would or would not be able to engage in their desired activities in the proposed General Business zoning district. The proposed change in zoning was recommended by the Planning Board and adopted by the City Council and became effective on October 29, 1985.

The Desgrosseilliers began conducting their multi-business operation in September, 1985, and have invested substantial sums of money in their businesses since then. In November, 1985, the City issued two sign permits to the Desgrosseilliers, each of which states that the permit was issued to "6 Corners Nursery Garden Center," and one of which states that the sign will read "6 Corners Nursery/Tree Care/Garden Center."

Rachel Desgrosseilliers testified that she and her husband had no idea that there might be problems operating their businesses in the General Business zone until 1987, when McPhee's mother told them that their land uses were unlawful. Rachel Desgrosseillier met with McPhee immediately thereafter, and was told by McPhee, "Well, you are unlawful.... Well, you always have been.... Because you were never really approved." Rachel Desgrosseillier testified that in 1987 she and her husband repeatedly, but unsuccessfully, attempted to get a comprehensible explanation from McPhee why their business activities were unlawful.

The City of Auburn took no action until December of 1988, when it served a Land Use Citation and Complaint against the Desgrosseilliers, claiming that the Desgrosseilliers had violated the Auburn zoning ordinance, chapter 29, sections 3.1(A) and 3.62. The City sought to enjoin the Desgrosseilliers from continuing these violations, and sought civil penalties and attorney fees, under 30 M.R.S.A. § 4966 (Supp. 1987).[2] In March, 1989, after trial, the District Court found that the Desgrosseilliers' nursery and landscaping businesses were operating in violation of the Auburn ordinance, that neither business was a lawful nonconforming use, and that the City was not estopped from prosecuting this case. The court enjoined the Desgrosseilliers from continuing their commercial nursery and commercial landscaping activities, ordered abatement of the commercial nursery stock planted on the premises within eight months, and fined the Desgrosseilliers $500 plus a $50 surcharge. The court found that imposing the City's attorney fees on the Desgrosseilliers would be unjust in the circumstances of this case.

On the Desgrosseilliers' appeal, the Superior Court vacated the District Court's judgment. The Superior Court stated that "in the very special fact circumstances of this case and with the unique factfindings of the District Court, the City of Auburn is barred by the doctrine of equitable estoppel from seeking injunction against or penalties from the defendants" as a result of the operation of their nursery and landscaping businesses. This appeal followed.

## II.

In this case, the Superior Court acted as an intermediate appellate court reviewing

---

**2.** In 1987, the Legislature made minor revisions to subsection 3 of 30 M.R.S.A. § 4966 and renumbered it as 30–A M.R.S.A. § 4506. P.L. 1987, ch. 318, § 2 (effective Sept. 29, 1987); P.L.1987, ch. 737, pt. A, §§ 1, 2 (effective March 1, 1989). The Legislature then repealed 30–A M.R.S.A. § 4506 and enacted essentially the same language in 30–A M.R.S.A. § 4452. P.L. 1989, ch. 104, §§ A, 46 and C, 10. The Desgrosseilliers have not argued that the penalties sought by the City were sought under the wrong statutory section.

the proceedings of the District Court. On this appeal from the Superior Court's judgment, we likewise examine the proceedings in the District Court. *Dunning v. Dunning* 495 A.2d 821, 823 n. 1 (Me.1985); *City of Portland v. Gemini Concerts, Inc.*, 481 A.2d 180, 181 (Me.1984); *Williams v. Williams*, 444 A.2d 977, 978–79 (Me.1982).

The principal question that the parties have argued before us is whether the District Court, on the facts that it found, was compelled to apply the doctrine of equitable estoppel in this case. In *Shackforth & Gooch, Inc. v. Town of Kennebunk*, 486 A.2d 102 (Me.1984), we discussed the elements of equitable estoppel:

> Proper application of the doctrine of equitable estoppel rests on the factual determination that "the declaration or acts relied upon must have induced the party seeking to enforce the estoppel to do what resulted to his detriment, and what he would not otherwise have done." *Martin v. Prudential Insurance Co.*, 389 A.2d 28, 31 (Me.1978) (quoting *Allum v. Perry*, 68 Me. 232, 234 (1878)). One who has induced another to believe what is untrue may not later assert the truth. *Roberts v. Maine Bonding & Casualty Co.*, 404 A.2d 238, 241 (Me. 1979). Furthermore, the reliance upon which estoppel is claimed must have been reasonable. *Id.*

*Shackforth*, 486 A.2d at 105–06.

At common law, it was held that "equitable estoppel could never be applied against any governmental official or agency acting in the discharge of any governmental function." *Maine School Administrative District No. 15 v. Raynolds*, 413 A.2d 523, 533 (Me.1980). However, in *Raynolds* we squarely rejected the common law's inflexible approach:

> The law of Maine is, rather, that depending on the totality of the particular circumstances involved, which will include the nature of the particular governmental official or agency acting and of the particular governmental function being

discharged as precipitating particular considerations of public policy, equitable estoppel may be applied to activities of a governmental official or agency in the discharge of governmental functions.

*Id.*[3] We therefore direct our attention to the particular circumstances surrounding the Desgrosseilliers' claim of estoppel in the present case.

The District Court found that when the Desgrosseilliers initially met with McPhee and described to him exactly what business activities they wished to commence, McPhee advised them to seek a zoning district change from Urban Residence to General Business, helped them draft a proposal to change the zoning district, and "did not warn them that a nursery or a landscaping business was forbidden in the General Business Zone." The court determined that the Desgrosseilliers "were reasonably given to understand that in the General Business Zone they could carry on all of their intended operations." The court further found that when the Desgrosseilliers presented their proposal to the City Council, they explicitly stated their intention to engage in the nursery and landscaping businesses on their property, and that they reasonably considered that they were authorized to engage in those business activities by the City Council's approval of the zoning change. The court then found that the Desgrosseilliers invested well over $500,000 to commence their various businesses, including the landscaping and nursery businesses, "in reasonable reliance that they could lawfully do so." The court also found that during the following three years the Desgrosseilliers sought and received permits to display signs on their property that showed that the Desgrosseilliers operated a nursery and a landscaping business. Finally, the District Court stated that it was "forced to the conclusion that the City Council and [McPhee] encouraged defendants to enter into a violation of the ordinance."

---

3. For a discussion of the role of governmental officials and agencies in the field of equitable estoppel, *see Maine School Admin. Dist. No. 15* *v. Raynolds*, 413 A.2d 523 (Me.1980), and Davis, *Administrative Laws of the Seventies*, §§ 17.01 et seq. (1976 and 1980 Supp.).

We agree that under these findings of fact the District Court could not escape the conclusion that the City's declarations and acts were reasonably relied upon by the Desgrosseilliers, induced them to do what they would not otherwise have done, and resulted in a detriment to the Desgrosseilliers.[4] Ordinarily, application of the doctrine of estoppel would be compelled upon these findings.

We pause, however, to consider the fact that this action concerns the enforcement of a zoning ordinance. Forceful policy reasons militate against restricting the enforcement of municipal zoning ordinances. Zoning ordinances are written to promote the public health, safety, welfare, convenience, morals, or prosperity of a community. See 101 C.J.S. Zoning § 1. Such ordinances should apply equally to all citizens; non-uniform enforcement of these ordinances tends to frustrate their purposes and to injure the public that these ordinances are designed to protect. Assuming without deciding that the Desgrosseilliers' two disputed land uses do violate the Auburn zoning ordinance, estopping the enforcement of that ordinance in this case would result in a situation in which the ordinance would allow the Desgrosseilliers to operate businesses denied others in the same zoning district.

Even so, upon balancing the interest in uniform enforcement against the City's misleading actions and the injury that the Desgrosseilliers stand to suffer if enforcement is permitted, we determine that to fail to apply an estoppel here would be inconsistent with the demands of fairness and justice. We have no doubt that the City misled the Desgrosseilliers into investing in their landscaping service and nursery businesses in 1985, failed to give them any indication that their business activities were illegal until 1987, and did not commence an enforcement action until 1988. While we do not consider the City's delay in enforcing the ordinance determinative of the estoppel issue, we do consider it a factor to be weighed. Moreover, the City has not demonstrated that the Desgrosseilliers' business activities seriously threaten the safety, welfare, prosperity, or character of the General Business zoning district in which these activities now operate. We conclude that a balance of the equities involved in the present case favors applying an estoppel to the enforcement of the Auburn zoning ordinance against the Desgrosseilliers.

We reject the City's argument that it cannot be equitably estopped because McPhee, the City Planning Board, and the City Council acted *ultra vires* to the extent that their words, actions, and omissions led the Desgrosseilliers to believe that their land use was lawful. We do not doubt that if the Desgrosseilliers had opened their landscaping and nursery businesses in the general business zone in exclusive reliance upon the advice and conduct of McPhee, that reliance would not have been reasonable. *Shackforth*, 486 A.2d at 106. However, there is no question that the City Planning Board and the City Council possess legislative as well as administrative powers, and that these two bodies acting together possess the authority to either change a ·oning district or to amend the Auburn zoning ordinance in its entirety. Accordingly, these bodies could have created a zoning district otherwise similar to the general business zoning district described in the zoning ordinance yet permitting plant and tree nurseries and landscaping services within that district had they so desired.

4. The District Court's findings of fact may be set aside only if they are "clearly erroneous" because there is no competent evidence in the record developed by the District Court to support these findings. *Leadbetter v. Morse*, 510 A.2d 524, 526 (Me.1986); *Dunning v. Dunning*, 495 A.2d 821, 823 (Me.1985); *Harmon v. Emerson*, 425 A.2d 978, 981–82 (Me.1981). As there was testimony presented substantiating every factual conclusion drawn by the District Court, the findings were not clearly erroneous. The City's argument that the Desgrosseilliers failed to establish their estoppel by "clear and satisfactory evidence," as required by *Severance v. Choate*, 533 A.2d 1288, 1292 (Me.1987) is without merit. The City points to nothing to show that the District Court failed to apply this standard properly when making its own factual findings.

### III.

Our determination that the Superior Court properly concluded that the City of Auburn is equitably estopped from bringing this land-use enforcement action against the Desgrosseilliers dispels our need to consider whether the Desgrosseilliers' nursery and landscaping operations violate the Auburn ordinance. Further, even though the question of whether by force of collateral estoppel the Desgrosseilliers' nursery and landscaping businesses are treated as legal nonconforming uses or as permitted uses may be of importance to both the Desgrosseilliers and the City at some time in the future, answering this question is not essential to our resolution in the present dispute. Finally, we need not consider whether the City would have been entitled to recover from the Desgrosseilliers its appellate attorney fees had the City been successful on this appeal.

The entry is:

Judgment affirmed.

All concurring.