H.E. SARGENT, INC.

v.

TOWN OF WELLS.

Supreme Judicial Court of Maine.

Argued April 3, 1996.

Decided May 13, 1996.

William S. Kany (orally), Smith Elliott Smith & Garmey, P.A., Saco, for Plaintiff.

Bruce M. Read (orally), Hodsdon Read & Shepard, Kennebunk, for Defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

RUDMAN, Justice.

H.E. Sargent, Inc. appeals from the judgment entered in the Superior Court (York County, *McKinley, A.R.J.*) affirming the decision of the Wells Zoning Board of Appeals

barring further operation of a Sargent-owned gravel pit without planning board site approval. Sargent argues: (1) that the pit was operating legally on April 24, 1993, and therefore may continue to operate pursuant to the Wells Land Use Ordinance; (2) that the town is estopped by a 1989 letter from the Wells Code Enforcement Officer from barring operation of the gravel pit; (3) that the doctrine of laches bars the town from enforcing its land use ordinance against the gravel pit; and (4) that it was denied due process by the Zoning Board of Appeals' consideration of the legality of the gravel pit after providing Sargent insufficient notice that the pit's legality with respect to town ordinances would be addressed by the Zoning Board of Appeals. We affirm the judgment.

## I

In 1989 Sargent became interested in purchasing real property on the Crediford Road in Wells, a portion of which had been used to mine gravel. At the suggestion of the Wells Code Enforcement Officer, Sargent sought an advisory opinion from the Maine Department of Environmental Protection (DEP) as to whether DEP had "rules and regulations" covering Sargent's proposed use of the gravel pit. The DEP responded by letter that, assuming the history of the gravel pit were in fact as Sargent related it to the DEP, the gravel pit would be grandfathered pursuant to the Site Location of Development Act [1] and a permit would not be required in order for Sargent to excavate gravel from pools on the floor of the existing pit to form one large permanent pond, as Sargent proposed. Sargent sent a copy of the DEP's qualified response to the Wells Code Enforcement Officer with a request for a formal indication of the town's position on the proposed use of the gravel pit. The Code Enforcement Officer wrote back confirming "the content of our conversations in the past couple of months" and stating, without citing authority, that "activity in the pit has been ongoing; and has attained 'vested rights' as prescribed

by the standards of the Code of the Town of Wells." Sargent bought the property and began operations.

In 1994 an amended Wells Land Use Ordinance became effective. The new ordinance prohibits dredging gravel lower than five feet above the seasonal high water table. The new ordinance, however, also provides that nonconforming dredging may continue in commercial amounts if 1) the pit was "legally operating" on April 24, 1993, 2) the operator timely submitted to the town required site documentation, and 3) the nonconforming use is not expanded. In the course of extended confusion as to the form of documentation Sargent was required to provide, the Code Enforcement Officer informed Sargent that it could dig no more gravel from lower than five feet above the seasonal high water table. Sargent, already working underwater at the Crediford Road pit, appealed from the Code Enforcement Officer's decision to the Wells Zoning Board of Appeals (ZBA). The ZBA voted to allow Sargent to continue digging underwater, on the theory that digging deeper did not constitute expansion of a nonconforming use.

The Wells Board of Selectmen, however, almost immediately requested that the ZBA reconsider its decision in order to take into account newly available information. On reconsideration the ZBA reversed its earlier decision, finding that the Crediford Road pit had not been legally operating on April 24, 1993, and determining that the gravel pit therefore could not continue as a nonconforming use, even with the required site documentation, absent site approval by the Wells Planning Board.

Sargent, as authorized by 30–A M.R.S.A. § 2691 (Pamph.1995) and Wells ordinance, sought direct judicial review pursuant to M.R.Civ.P. 80B of the ZBA's reconsidered decision. The court denied Sargent's motion for a trial of the facts pursuant to M.R.Civ.P. 80B(d) and affirmed the Zoning Board of

---

**1.** The Site Location of Development Act provides that any development not in existence as of January 1, 1970, is barred from operation absent prior approval from the Board of Environmental Protection. 38 M.R.S.A. §§ 483–A, 488 (1989 & Supp.1995). A gravel pit in operation as of January 1, 1970, required no such approval.

Appeals decision on reconsideration, and Sargent appeals.

▮ When the Superior Court, acting as an intermediate appellate court, reviews an administrative agency decision without developing any additional evidence beyond the record before the agency, we review the administrative record directly for an abuse of discretion, error of law, or findings unsupported by substantial evidence on the record. *Boivin v. Town of Sanford*, 588 A.2d 1197, 1199 (Me.1991). The "substantial evidence" standard for reviewing an agency's findings of fact is identical to the "clear error" standard used to review the factual findings of a trial court. *Gulick v. Bd. of Envtl. Protection*, 452 A.2d 1202, 1207–08 (Me.1982). We reverse a finding of fact for "clear error" only when there is no competent evidence in the record to support the finding; the finding is based on a clear misapprehension of the meaning of the evidence; or the force and effect of the evidence, taken as a whole, rationally persuades to a certainty that the finding is "so against the great preponderance of the believable evidence that it does not represent the truth and right of the case." *Pongonis v. Pongonis*, 606 A.2d 1055, 1057–58 (Me.1992). We review matters of law *de novo*. *Collins v. Trius, Inc.*, 663 A.2d 570, 572 (Me.1995).

## II

▮ Sargent first asserts that the Zoning Board of Appeals erred as a matter of law in deciding that the Crediford Road gravel pit was not operating legally on April 24, 1993. Legal operation on April 24, 1993, is the threshold criterion set by section 7.6.2 of the 1994 Wells Land Use Ordinance[2] for continued operation of a nonconforming use. The 1994 ordinance includes no definition of "legally operating." The meaning of a term in a zoning ordinance is a question of law. *Mayberry v. Town of Old Orchard Beach*, 599 A.2d 1153, 1154 (Me.1991). We construe an ambiguous, undefined term in a zoning ordinance "reasonably with regard both to the objects sought to be obtained and to the general structure of the ordinance as a whole." *Christy's Realty Ltd. Partnership v. Town of Kittery*, 663 A.2d 59, 62 (Me.1995); *Singal v. City of Bangor*, 440 A.2d 1048, 1052 (Me.1982). Undefined land use ordinance terms should be given their common and generally accepted meaning unless the context of the ordinance clearly indicates otherwise. *George D. Ballard, Builder, Inc. v. City of Westbrook*, 502 A.2d 476, 480 (Me. 1985).

▮ By common and generally accepted meaning, a gravel pit "legally operating" on April 24, 1993, in Wells was a gravel pit complying with all applicable provisions of federal law, Maine statute, and the town ordinances then in effect. This common and generally accepted meaning of "legally operating" raises no issue of the town's jurisdiction in issues of federal and state law. Although a zoning board of appeals has no authority to make its own assessment of the legality of an operation pursuant to federal or state law, it may receive evidence from appropriate federal or state agencies to establish or disprove legality. 30–A M.R.S.A. § 2691(3) (Pamph.1995). The Wells Zoning Board of Appeals is entitled to review the

---

**2.** Section 7.6.2 of the 1994 Wells Land Use Ordinance provides:

> 7.6.2. Any mineral extraction use legally operating on April 24, 1993, may:
> 7.6.2.1. continue to operate according to an approved site plan OR
> 7.6.2.2. continue to operate and expand the use by one acre in area without an approved site plan provided that the use has complied with the [engineering documentation] requirements of Section 7.6.1.1. Any increase in area of more than one acre may only be done according to an approved site plan. The Planning Board shall recognize the legal nonconforming status of those portions of a site on which the mineral extraction use was present and on those portions may not impose any conditions which would exceed the requirements in effect when the use was established OR
> 7.6.2.3. remove up to 500 cubic yards of material in any two-year period from the lot without having obtained an approved site plan and without paving the entrance road as required in Section 7.6.4.3. provided that the use has complied with the requirements of Section 7.5.1.2. No more than 500 cubic yards may be removed from any lot in any two-year period unless mineral extraction is a permitted use in the district in which the lot is located and an approved site plan has been obtained for the expanded use.

legality of the Crediford Road gravel pit on April 24, 1993, pursuant to section 7.6.2 of the 1994 Wells Land Use Ordinance, by considering evidence of the gravel pit's legality pursuant to all applicable federal, state, and municipal law.

■ Competent evidence on the record supports the ZBA finding that the Crediford Road gravel pit was not operating legally on April 24, 1993, pursuant to the Site Location of Development Act, 38 M.R.S.A. §§ 483–A to 488 (1989 & Supp.1995).[3] The ZBA in making its decision considered the DEP letter to Sargent regarding the gravel pit's compliance with State law, which stated:

> This letter is in response to your request for an advisory opinion concerning the applicability of the Site Location of Development Act (38 M.R.S.A. Section 488 *et. seq.*) to the above-captioned project. Based upon the information contained in your letter to me dated February 2, I have determined that a permit will not be required.
>
> The facts as I understand them are:
> 1. Mr. Greg Tetherly owns a 31 acre parcel of land located on the Credeford [sic] Road in Wells.
> 2. A gravel pit covers approximately two-thirds of the property.
> 3. Mr. Tetherly has stated that he has not expanded the pit since he purchased the property in 1983 and to his knowledge the pit has not been expanded in area since 1970.
> 4. The existing pit contains numerous areas excavated into the groundwater.
> 5. Your firm proposes to excavate additional materials such that one large pond is created.
>
> You asked whether the Department has jurisdiction over the creation of this large pond. Assuming that the pit is grandfathered as Mr. Tetherly has indicated, then any additional mining which has not ex-

panded the pit by more than 5 acres since 1970 does not require site approval as a mining activity or gravel pit.

Aerial photographs taken in 1975 and offered in evidence at the Zoning Board of Appeals reconsideration hearing depict no gravel pit in existence at the Crediford Road site. Contrary to the third assumption on which the DEP based its determination, the mining of gravel at the Crediford Road site was commenced after 1970 and therefore is not "grandfathered as Mr. Tetherly has indicated." Sargent offered no other evidence to show that the pit was operating legally pursuant to Maine law. The ZBA did not err as a matter of law in deciding on reconsideration that, pursuant to the analysis of the DEP, the Crediford Road gravel pit on April 24, 1993, was not "legally operating" pursuant to section 7.6.2 of the 1994 Wells Land Use Ordinance.

### III

Sargent argues that even if the Crediford Road pit was not operating legally on April 24, 1993, the ZBA was compelled to apply the doctrine of estoppel to bar declaring the pit illegal because in 1989 the town Code Enforcement Officer by letter assured Sargent the pit was lawful pursuant to town ordinances. The court declined to apply the doctrine of estoppel to its determination that the pit was operating illegally on April 24, 1993. The doctrine of equitable estoppel is a principle of law. *See Glus v. Brooklyn Eastern Dist. Terminal,* 359 U.S. 231, 234, 79 S.Ct. 760, 762–63, 3 L.Ed.2d 770 (1959).

■ Proper application of the doctrine of equitable estoppel rests on the factual determination that

> "the declaration or acts relied upon must have induced the party seeking to enforce the estoppel to do what resulted to his

---

3. 38 M.R.S.A. § 483–A (1989 & Supp.1995) provides in pertinent part:
   No person may ... operate or cause to be operated ... any development requiring approval under this article without first having obtained approval ... from the Board of Environmental Protection.

38 M.R.S.A. § 488 (1989 & Supp.1995) provides in pertinent part:
   This Article shall not apply to any development in existence ... on January 1, 1970. ...

detriment, and what he would not otherwise have done."

*City of Auburn v. Desgrosseilliers,* 578 A.2d 712, 714 (Me.1990) (citations omitted). Such reliance, however, must be reasonable. *Id.* Equitable estoppel may be applied to the activities of a government official or agency in the discharge of a government function. *F.S. Plummer Co. v. Town of Cape Elizabeth,* 612 A.2d 856, 860 (Me.1992). In assessing a claim of equitable estoppel against the government, we consider the totality of the circumstances, including the nature of the government official or agency whose actions provide the basis for the claim and the government function discharged by that official or agency. *Id.* "[A] party seeking to estop the enforcement of a zoning ordinance bears a greater burden of proof because of 'the [f]orceful public reasons [that] militate against restricting the enforcement of municipal zoning ordinances." *Id.* at 860–61. The government in seeking to enforce the law may not be estopped because of the conduct of its agents on the same terms as any other litigant. *Heckler v. Community Health Servs. of Crawford County, Inc.,* 467 U.S. 51, 60, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984).

█ A representative of Sargent testified at the initial ZBA hearing that

> [b]efore we could even consider buying the property, we had to make sure that we would be allowed to mine the gravel. We contacted the Code Enforcement Officer, Dan Soule at the time, and asked him the question, and *he said that he would need to have confirmation from the DEP that they would allow it, and if they would allow it, then it would be a grandfathered operation in the Town, since it predated the Ordinance.* So we did that. We got documentation from both the State and the Town of Wells that this is a grandfathered operation and we could continue to mine below the water table. (emphasis added)

The DEP, however, had stated explicitly in response to the inquiry from Sargent that the pit was operating legally pursuant to the Site Location of Development Act only if the information concerning the existence of the gravel pit in 1970 were accurate. Ignoring the qualifying condition of the DEP's analysis as to the pit's legality, Sargent wrote the Code Enforcement Officer that the DEP confirmed the pit was grandfathered. Based on this letter from Sargent, "conversations" that had taken place with Sargent, and his apparent assumption that an existing gravel pit automatically would qualify as legal pursuant to town ordinances if it predated those ordinances, the Code Enforcement Officer in 1989 wrote Sargent that the pit had attained "vested rights" pursuant to the town ordinances.

In the totality of the circumstances, to the extent that Sargent relied on the Wells Code Enforcement Officer's letter for assurance that the gravel pit was operating legally in 1989, that reliance is unreasonable. Sargent had been informed that the gravel pit's legality was conditioned on its compliance with State law. Sargent itself had conveyed incorrect historical information to both the DEP and the town concerning the date the gravel removal operation commenced. The DEP response explicitly conditioned an assessment of the pit's legality on the truth of these historical representations. The Code Enforcement Officer made no representation as to the legality of the gravel pit pursuant to the statute. The town of Wells is not estopped from declaring the gravel pit was illegally operating on April 24, 1993.

## IV

█ Sargent next contends that because the town of Wells never took action against the Crediford Road gravel pit for operating illegally pursuant to the 1976, 1979, 1985, and 1989 Wells Land Use Ordinances, the doctrine of laches bars the town from enforcing the 1994 ordinance against the gravel pit. The Superior Court declined to apply the doctrine of laches.

> Laches is an omission to assert a right for an unreasonable and unexplained period of time under circumstances prejudicial to the adverse party.

*Town of Falmouth v. Long,* 578 A.2d 1168, 1170 (Me.1990). We never have adopted laches as an affirmative defense to prevent a

town from enforcing its zoning regulations. *Id.*

Delay which might forfeit a private person's right to have a zoning violation enjoined does not affect a similar right in a municipality. Thus, a municipality may maintain an action to enjoin [a] violation of a zoning ordinance although the violation has existed more than 20 years without any objection being expressed by municipal officials.

*Id.* at 1170. Whether the equitable doctrine of laches applies in given circumstances is a question of law.

The Crediford Road gravel pit violated each of the sequential Wells ordinances in effect since the pit began by operating without any prior town approval. Short of a spontaneous systematic search of the status of all gravel pits in Wells, the town had no way of knowing that the pit was operating in violation of approval requirements. In these circumstances, given the silent nature of the Crediford Road gravel pit's continuing failure to obtain required town approval, laches does not bar the town from seeking enforcement of its zoning ordinance despite the fact that the gravel pit has been operating illegally for perhaps as many as eighteen years. The trial court did not err in refusing to recognize Sargent's defense of laches on the basis of the town's failure to enforce its zoning ordinances prior to 1994.

### V

Sargent argues finally that the court erred in denying its motion pursuant to M.R.Civ.P. 80B(d) for a trial of the facts that would have allowed Sargent to add to the record evidence on issues Sargent was unprepared to address at the time of the reconsideration hearing. Sargent claims it was unprepared because of insufficient notice from the ZBA of the issues that were to be addressed at the reconsideration hearing. Sargent's claim of insufficient notice invokes constitutional rights of procedural due process.[4]

■ The procedural due process requirements of notice and an opportunity to be heard are triggered only where government action results in a deprivation of an individual's life, liberty, or property interests. *Jackson v. Town of Searsport,* 456 A.2d 852, 856 (Me.1983). Due process is that process that "protects against the exercise of arbitrary governmental power and guarantees equal and impartial dispensation of law according to the settled course of judicial proceedings or in accordance with fundamental principles of distributive justice." *Mutton Hill Estates, Inc. v. Town of Oakland,* 468 A.2d 989, 993 (Me.1983).

The Zoning Board of Appeals decision, on reconsideration, that Sargent may not operate the Crediford Road gravel pit without planning board approval arguably may deprive Sargent ultimately of a property use interest. No particular course of proceedings is prescribed, either by statute or ordinance, regarding the extent of required notice of issues to be addressed at a reconsideration hearing. The notice afforded Sargent here, however, does not constitute an arbitrary exercise of governmental power and did not deprive Sargent of fundamental justice.

■ Sargent did receive notice that a reconsideration hearing would be held to address the legal status of the Crediford Road gravel pit. Sargent participated therein represented by counsel. Nothing in any notice to Sargent suggests that at the reconsideration hearing inquiry into the legal status of the gravel pit would be limited to the Site Location of Development Act. The 1994 Land Use Ordinance makes clear that continued operation of a nonconforming gravel pit, the key question to be decided by the ZBA on reconsideration, depends on whether the pit was "legally operating" on April 24, 1993. The Ordinance does not restrict legality to mean only compliance with State law. The issue of the pit's legality pursuant to town ordinances had been within Sargent's awareness from the moment Sargent first sought to have the Wells Code Enforcement Officer

---

**4.** We long have adhered to the principle that the United States and Maine Constitutions declare identical concepts of due process. *Penobscot*

*Area Hous. Dev. Corp. v. City of Brewer,* 434 A.2d 14, 24 n. 9 (Me.1981).

memorialize the "conversations" by which he had agreed with Sargent that the gravel pit had "vested rights" pursuant to the town "Code." The court did not err in denying Sargent a trial of the facts to compensate for a claimed lack of opportunity to present evidence at the reconsideration hearing. Sargent had constitutionally adequate notice that the ZBA would address at the reconsideration hearing the gravel pit's legal status.

The entry is:

Judgment affirmed.

All concurring.