STATE OF MAINE

KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-02-17
SKS —KEN— 12/3/2003

MICHAEL A. ROCQUE,
et al.,

Plaintiffs

v.

INHABITANTS OF THE
TOWN OF CHINA,

Defendant

DONALD L. GARBRECHT
LAW LIBRARY

FEB 18 2004

DECISION AND PARTIAL
JUDGMENT

This matter comes before the court on an appeal of consolidated decisions of the Town of China Board of Appeals (Board) and accompanying independent claims. The underlying question for all of the administrative appeals and hearings concerns whether plaintiff/appellant Michael Rocque and his wife Julie will be allowed to build a house on a lot on the shore of Three Mile Pond. The answer to this question depends in large part on whether the property at issue is completely within the Resource Protection District (where no building of residential structures is allowed) or partially within the Shoreland District wherein residential construction is allowed with a permit from the Code Enforcement Officer (CEO). The CEO initially issued a building permit, but later reversed himself and ordered the Rocques to stop construction. Mr. Rocque appealed this decision to the Board and then appealed the Board's own decisions to this court. The procedural history is obviously quite complex, but the court has determined that both the Rule 80B appeal and the plaintiffs' independent claims are properly before it.

## Factual Background

Michael A. Rocque, Sr. and his wife, Julie E. Rocque, appeal a January 23, 2002 decision by the Board revoking a building permit previously issued by the CEO on June 5, 2001. According to the Board, between these dates, the CEO discovered that the China Land Use District Map which had originally been relied upon in issuing the permit, contained errors inserted by the mapmaker and did not accurately reflect the vote of the citizens at town meeting. As a result, the Board concluded that the lot in question falls completely in a resource protection district and is unbuildable. Furthermore, the Board agreed with the CEO's rejection of both the first and second phosphorous control plans presented by the Rocques.

## Standard of Review

On appeal, this court independently examines the record and reviews the decision of the municipality for "error of law, abuse of discretion, or findings not supported by substantial evidence in the record." *Yates v. Town of Southwest Harbor*, 2001 ME 2, ¶ 10, 763 A.2d 1168, 1171. A substantial evidence standard requires the court to examine the entire record "to determine whether on the basis of all the testimony and exhibits before the [board] it could fairly and reasonably find the facts as it did." *Ryan v. Town of Camden*, 582 A.2d 973, 975 (Me. 1990). "The board's decision is not wrong because the record is inconsistent or a different conclusion could be drawn from it." *Twigg v. Town of Kennebunk*, 662 A.2d 914, 916 (Me. 1995). To prevail, the plaintiff must show "not only the board's findings are unsupported by record evidence, but also that the record compels contrary findings." *Total Quality v. Town of Scarborough*, 588 A.2d 283, 284 (Me. 1991).

It is also necessary to consider exactly what decision is being reviewed by the court. This is important because it determines what constitutes the record should be

reviewed by the court. As noted in *Stewart v. Sedgwick,* 2000 ME 157, 757 A.2d 773, the statute creating municipal boards of appeals (30-A M.R.S.A. § 2691) provides that a board usually will conduct a hearing *de novo* unless the municipal ordinance explicitly directs otherwise. The Town of China ordinance creates a seven-member board of appeals. Chapter 9, section 1, China Me., Land Development Code. That ordinance makes it clear that unlike the usual case, the China Board is limited to acting in an appellate capacity and normally the court's review on appeal from the Board would be a direct review of the decision of the previous tribunal. However, in the present case, the previous decision was the CEO's, and not a decision of a tribunal, e. g. the Planning Board, which makes a decision after an opportunity for hearing and presentation of evidence by all parties. Therefore, the Board appropriately conducted a *de novo* hearing rather than thr usual appellate review in light of the nature of the previous decision, and the court will now review the full record of the Board rather than the abbreviated findings of the CEO.

## Standing

Also prior to discussion of the merits, it is necessary to address the respondent's argument that petitioner Michael Rocque lacked standing to apply for a permit from the town. The basis for this argument is that less than six months after Michael Rocque purchased the property in his name from Clarice Robideau, he conveyed the property to his wife Julie solely in her name. Therefore, when Mr. Rocque applied for the building permit in May of 2001, he was not the owner of the property and it is argued that he lacked the necessary interest to make the application. The ownership is not contested, indeed Mr. Rocque indicated on the application itself that Julie Rocque was the "property owner." Ordinarily, applications are limited to individuals who have a direct interest in the property. However, the China Code specifically provides that

applications "shall be submitted by the owner or his authorized agent . . ." (section 6(2)(b)). In this case, the Board itself found that Michael Rocque was acting as an authorized agent for Julie when he made the application, and there is sufficient evidence of record to support that conclusion. Therefore, the court agrees with the Board that Michael Rocque had standing to apply for the permit and to appeal decisions of the CEO to the Board and from the Board to this court.

## Appeal - Vagueness

The petitioners' argue first on appeal that the Board's finding that their application to show how they would comply with the Phosphorous Standard Section 3 of the Ordinance, is void for vagueness. Petitioners maintain that the ordinance standard ". . . to the maximum extent possible . . ." does not give sufficient notice and creates such a subjective standard that it denies applicants equal protection of the law and calls upon the CEO essentially to legislate the standard. The respondent replies that this issue was not raised before the Board and is not preserved for appeal. *Oliver v. City of Rockland*, 710 A.2d 905, 907 (Me. 1998). The court agrees with the Town and finds that the issue of vagueness has not been preserved for this Rule 80B appeal.

## Appeal - Res Judicata

The petitioners also argue that the first suggestion of the Board in its August 16, 2001 findings - that the property in question was in both zones - was never appealed by either party and became a final ruling, which cannot be reversed as a matter of *res judicata*. This argument fails to recognize that the August 16, 2001 order merely found that the application was incomplete and remanded the matter to the CEO. Therefore, this order was never a final judgment and the Board was completely within its authority to further review the issue itself after the CEO had discovered the mistake on the map that had been used.

## Appeal – Appropriate Map

The issue of the land use map gets to the heart of the matter. The findings of the Board, for which there is abundant support in the record, indicate that the map which was on display in the Town Offices in May 2001, and to which the participants referred, was mistaken concerning the classification of the property in question. In a nutshell, the map indicated some proposed changes to the classification, including the Rocque property, which were defeated by vote at town meeting. Some how this proposed map became accepted as the map showing the true classifications of town property. The Board found, and the court agrees, that the controlling classification is what was voted by the Town rather than what may have mistakenly been placed on the map (unless the Town is equitably estopped, discussed below). Therefore, the correct classification of the property would render it unbuildable and the correct map is the one marked as the Town's Exhibit 2.

## Independent Claim – Due Process

The petitioners argue that the correspondence and statements by Town of China officials evidence "clandestine" meetings of the Board of Selectmen and CEO which had a "chilling effect" on the Board hearings. The respondent asserts that the claims are false and argues that in any event it is too late to raise these issues now, again citing *Oliver v. City of Rockland*. The court agrees that no evidence of violation of due process exists in the record and the issue was not preserved for appellate review.

## Independent Claim – Equitable Estoppel

Finally, the plaintiffs make an independent claim that even if the map displayed in the town offices in May 2001 was incorrect and the property was actually unbuildable under the ordinance, the Town should be estopped from rejecting a building permit under the theory of equitable estoppel. In other words, if the Town has made a representation upon which a citizen applicant has reasonably relied to his detriment, the Town should be equitably estopped from revoking any decision, such as a building permit, based upon that mistake. This argument presents at the same time both the plaintiffs' last, best chance of prevailing and some troubling questions.

For decades, the operative theory of law was that government cannot be estopped due to a citizen's detrimental reliance on its mistaken directives. *See, Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380 (1947). However, since 1990 the theory of application of principles of equitable estoppel to government agencies in Maine has been controlled by *City of Auburn v. Desgrosseilliers*, 578 A.2d 712 (Me. 1990). In that case, the Law Court held:

> The law of Maine is rather, that depending on the totality of the particular circumstances involved, which will include the nature of the particular governmental official or agency acting and of the particular governmental function being discharged as precipitating particular considerations of public policy, equitable estoppel may be applied to activities of a governmental official or agency in the discharge of its governmental functions.

*Id.* at 714.

In essence, the plaintiffs are arguing that even if the map was wrong and the decision of the Board was correct and otherwise upheld, they should still be permitted to build the residence for which they thought they had a permit, because they reasonably relied on the information and permit, and began the construction to their detriment. According to the record, the plaintiffs began construction very shortly after

the permit was issued on June 5, 2001. However, the argument is weakened by the fact that the concrete basement that the Rocques poured exceeded the dimensions of the basement allowed in the permit. In other words, the plaintiffs had violated the permit even before its validity was questioned. The argument is weakened further by the fact that much of the construction appears to have occurred after the initial appeal of the building permit was made by neighbors on June 25, 2001. Troubling as these factors are in the context of the equitable estoppel claim, there is yet another factor which is more deeply troubling to the court.

The added factor is one upon which the Board did not rely, but which is a matter of record and of concern to the court. Exhibit 25 of the record is a letter dated July 31, 2001, from the attorney of the previous owner of the property, Clarice Robideau, to Mr. Rocque concerning the circumstances under which the property had been purchased. Simply stated, that correspondence suggests that Mr. Rocque, who was the chairman Town of China Planning Board at the time of the purchase, spoke with Mrs. Robideau at the town office about her unpaid property taxes and suggested that he might purchase the property from her. It further alleges that in that conversation Mr. Rocque represented that the property was unbuildable, showing her the lot on a map to illustrate his point. As a result, it was suggested by the attorney that Mr. Rocque was able to purchase for $6,000 a property that was valued for tax purposes at $36,000 or more. These allegations were made right after the first appeal of the building permit by neighbors on June 25, 2001, and just before the first hearing on that appeal on August 6. There is no indication from the record that any further action was taken with regard to this issue, but it was one of the bases referred to obliquely by the CEO as the reason for his decision to revoke the building permit.

If these allegations were true - if Mr. Rocque told the previous property owner that the lot was unbuildable - it would raise two questions. First, the representation would be proof that Mr. Rocque already knew that the lot was unbuildable so that he could not be considered to reasonably rely on the incorrect zoning map at the time that he applied for the building permit. Second, there is a question of the cleanliness of Mr. Rocque's hands in approaching the court for relief in equity. If it were true that Mr. Rocque informed the previous property owner that the lot was unbuildable, and as a result acquired the property for a sixth of its price, he would be hard pressed to present himself before the court with the type of innocence required to trigger the court's equitable jurisdiction.

Although the CEO referred obliquely to title questions in his decision, the Board did not make specific findings in that regard. Nevertheless, since the petitioners' independent claim requests the court to exercise its equitable jurisdiction, and the court is concerned on its own about the plaintiffs' entitlement to the requested relief, further fact finding proceedings may be necessary. This court previously denied requests for evidentiary proceedings on the independent claims presented by the plaintiffs. However, after a closer review of the record, the court realizes such investigation may be necessary. There is no indication in the record that the complaints of the attorney of the previous owner were ever resolved. However, since these issues have caused sufficient concern to the court, there should be adequate opportunity for the parties to develop these factual matters. Although denying the petitioners' Rule 80B appeal and their independent due process claim, the court will retain jurisdiction with regard to their equitable estoppel claim until the circumstances of the transfer of ownership of the property from Ms. Robideau to Mr. Rocque can be more fully determined.

Therefore, the entry will be:

(1)     Petitioners' appeal pursuant to Rule 80B is DENIED.

(2)     Plaintiffs' independent claim for relief for violation of due process is DENIED.

(3)     Plaintiffs' independent claim for relief as a matter of equitable estoppel is RESERVED and the court retains jurisdiction. The parties will have sixty (60) days from the date of this order to conduct any necessary discovery. The matter will then be scheduled for an evidentiary hearing, as necessary, on the sole issue of whether the plaintiffs are entitled to relief as a matter of equitable estoppel.

Dated: December____3____, 2003                    _____

S. Kirk Studstrup
Justice, Superior Court

Date Filed __3/1/02__ __Kennebec__ Docket No. __AP02-17__
County

Action __Complaint for Review of Governmental__ Action
80B

# J. STUDSTRUP

__Michael A. Rocque Sr. & Julie E. Rocque__ vs. __Inhabitants of the Town of China__

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Ronald W. Bourget, Esq.<br>64 State Street<br>Augusta, Maine 04330-5149 | Alton C.Stevens, Esq.<br>44 Elm Street<br>P.O. Box 708<br>Waterville, Maine 04903-708<br>-Michael A. Hodgins, Es.<br>160 Capitol Street<br>P.O. Box 5057<br>Augusta, Maine 04332-5057 |

| Date of Entry | |
|---|---|
| 3/1/02 | Complaint for Review of Governmental Action, filed. s/Bourget, Esq. |
| 3/8/02 | Original Summons with return service made upon Inhabitants of the Town of China, filed.<br>Acknowledgment of Receipt of Summons and Complaint, filed. s/Stevens, Esq. |
| 3/25/02 | Plaintiffs' Motion for Trial of the Facts, filed. s/Bourget, Esq. (filed 3/22/02)<br>Plaintiffs' Statement of Nature of an Offer of Proof, filed. s/Bourget, Es<br>Plaintiffs' Motion for Extension of Time to File Record on Appeal and Briefs, filed. s/Bourget, Esq.<br>Proposed Order, filed. s/Bourget, Esq. |
| 3/26/02 | Defendant's Motion to Dismiss Independent Claims with Incorporated Memorandum, filed. s/Stevens, Esq.<br>Defendant's Motion for More Definite Statement with Incorporated Memorandum, filed. s/Stevens, Esq.<br>Request for Hearing, filed. s/Stevens, Esq.<br>Proposed Order, filed.<br>Proposed Order, filed. |
| 3/28/02 | Motion to Allow Late Motion to Specify Further Proceedings Pursuant to ME.R.CIV.P.80B(i), filed. s/Bourget, Esq.<br>Proposed Order, filed.<br>Request for Hearing, filed. s/Bourget, Esq.<br>Motion for the Court to Specify the Future Course of Proceedings, filed. s/Bourget, Esq.<br>Request for Hearing, filed. s/Bourget, Esq.<br>Proposed Order, filed. |
| 3/29/02 | Defendant's Memorandum in Opposition to Plaintiffs' Motion for Trial of the Facts, filed. s/Stevens, Esq. (attached exhibit A) |
| 4/2/02 | Amended Motion to Allow Late Motion to Specify Further Proceedings Pursuant to ME.R.CIV.P.80B(i), filed. s/Bourget, Esq.<br>Proposed Order, filed.<br>Request for Hearing, filed. s/Bourget, Esq. |

STATE OF MAINE

KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-02-17

MICHAEL A. ROCQUE, *et al.,*

Plaintiffs

v.

INHABITANTS OF THE
TOWN OF CHINA,

Defendant

**DECISION AND JUDGMENT**



JUN 1  2005

This matter comes on again before the court on the plaintiffs' appeal of consolidated decisions of the Town of China Board of Appeals ("Board") and accompanying independent claims. More precisely, in light of this court's decision and partial judgment dated December 3, 2003, the only issue before the court is the plaintiffs' independent claim for relief as a matter of equitable estoppel, as will be seen. This relief will be denied for the reasons stated below.

### Procedural and Factual Background

As previously noted in the court's December 3, 2003 decision and partial judgment, the crux of the issues before the court concern whether the Rocques will be allowed to build a house on a lot they own on the shore of Three Mile Pond. After the Rocques had purchased the property from Clarice Robideau, they applied for and received a building permit to construct a residence on the property. The Code Enforcement Officer ("CEO") initially issued the building permit as the result of his understanding from a map located in the town offices that this property was partially within the shoreland district where building would be permissible. Later, after the Rocques had begun their construction – construction which violated the permit

concerning its size – the CEO reversed himself and ordered the Rocques to stop construction. Rocque appealed this decision to the Town of China Board of Appeals which upheld the CEO due to an error in the map and rescinded the building permit. Rocque then appealed the Board's decision to this court pursuant to M.R. Civ. P. 80D, and included with the appeal independent claims of equitable estoppel and due process.

Following briefing and oral argument, the court reached its decision with regard to the Rule 80B appeal and the due process independent claim in its December 3, 2003 decision. The court concluded that the Board was correct in its interpretation and use of the corrected map designation for the property and that the independent due process issue was not previously raised before the Board and was not preserved either for appellate review or independent claim. However, with regard to the plaintiffs' independent claim of equitable estoppel on the part of the town, the court found that further factual development was necessary in light of some indication of the circumstances of the acquisition of the property.

An evidentiary hearing was conducted on January 28, 2005, at which testimonial and other evidence was presented relating to the equitable estoppel issue. The Rocques claim is that the issuance of the permit and statements by the CEO led them to believe that the property was buildable and that they began construction in reliance on this representation. The argument is that the town should now be estopped from taking a different position, i.e, that the lot is unbuildable and denying the plaintiffs the building permit they at one time had been issued. The additional evidentiary development was necessary in light of a previous indication concerning the circumstances of Mr. Rocque's purchase of the property and his knowledge at that time.

At the evidentiary hearing, Rocque testified as to his recollection of the events surrounding the purchase of the property. That version was not consistent with the version of events testified to by the abutting property owner, the town manager, the deputy town clerk and the CEO. The court finds the testimony of these latter witnesses to be more candid and persuasive, and based on that testimony, makes the following findings of fact.

Prior to early 2000, the property in question had been owned by one Clarice Robideau. In the Fall of 1999, Mrs. Robideau had called on the abutting property owner, Tom Whittiker, to ask whether he wished to purchase the property for $35,000. Mr. Whittiker offered $20,000, although he was of the opinion that the property was unbuildable. Ms. Robideau turned down the Whittiker offer indicating that she did not know the value of the property.

In February of 2000, Mrs. Robideau went to the South China Town Office to make a partial payment on her town taxes which were in arrears. In the process, Mrs. Robideau made a comment about being interested in selling the property because of her belief that the lot was unbuildable. At that point, Rocque entered the room and introduced herself at the counter as a member of the Planning Board. Standing next to the zoning map, Rocque several times said to Robideau that the lot was unbuildable and expressed interest in purchasing the lot himself. The tax valuation of the property is $36,000; the discussed purchase price would have a net cost to Rocque of approximately $7,000 - $8,000.

Having witnessed Rocque's approach to Ms. Robideau, the CEO reported to the town manager his concern that a member of the Planning Board was conducting business at the town office counter and concern about the price that was being offered. When confronted by the town manager, Rocque responded there was no problem and

that he was not getting a preferential price in light of the fact that the lot was unbuildable. The purchase was quickly consummated.

In late Winter 2001, Rocque approached CEO Pierz to discuss a building permit for the property. Pierz had previously thought the property to be unbuildable, but when asked by Rocque to check the zoning map, it looked as if the property were split between shoreland and resource protection zones, thereby allowing building with certain conditions. The CEO issued a building permit based upon his reading of the map, but later, after an appeal by abutting landowners, it was found that the map was incorrect and the property is unbuildable. At this point, the CEO rescinded the building permit, leading to the appeals presently before the court.

Other key findings include the following: Although it is contrary to Rocque's testimony, CEO Pierz talked with Rocque about the property prior to its purchase, but did not discuss its buildability until late Winter of 2001 after the sale had taken place. The town tax card for the property shows the property as being buildable, but that was because a camp had previously been located on the property. The characterization of Rocque's lot on the zoning map in February 2001 was erroneous, based upon a mistake made by the mapping company. After discovery of the error in late 2001, a corrected map was sent to the town and placed on display. The present map accurately shows that the Rocque property is not buildable.

## Discussion

As explained in the court's order of December 3, 2003, the plaintiffs' appeal of the Town of China Board of Appeals and the petitioners' independent claim for relief for violation of due process have been denied. The only remaining issue for review is the plaintiffs' independent claim for relief on a theory of equitable estoppel As also explained in the December 2003 order, if the Town of China had made a representation

upon which a citizen applicant has reasonably relied to his detriment, there may be circumstances in which the town should be equitably estopped from revoking a building permit claiming the permit was based upon a mistake. *City of Auburn v. Desgrosseilliers*, 578 A.2d 712 (Me. 1990). In the present case, the CEO erroneously issued a building permit and the town's tax cards erroneously showed the property in question as buildable. Therefore, the decision of the Board of Appeals denying the building permit should stand unless Rocque can sustain his burden of proving that he reasonably relied on the advice of the CEO and the tax records to his detriment in beginning and continuing construction work until the permit was rescinded.

The defendant presents several arguments based essentially on the same facts as those found by the court. The primary arguments is that in order to find equitable estoppel, the individual who has relied to his detriment on the town's representation must have done so "reasonably." Given Rocque's representations at the time that he purchased the property, he either (1) sincerely believed that the property was unbuildable and could not reasonably rely on subsequent review of the map without further investigation, or (2) told Ms. Robideau that the property was unbuildable in order to get a reduced price, while hoping that he would be able to get a building permit based upon the incorrect map. In neither situation is there any evidence that town officials, either the CEO or keepers of the tax records, knowingly misled Rocque. Rather, it appears that Rocque argued the mistake in the map for his own benefit. In any event, whatever reliance Rocque placed upon the map, the building permit and the tax records, it cannot be considered "reasonable" reliance.

Further, equitable estoppel by definition is a remedy utilizing the court's equitable jurisdiction. It is a long held maxim of equity that he who seeks equitable relief must come to court with "clean hands." *Hamm v, Hamm,* 584 A.2d 59 (Me. 1990);

citing *Conners v. Conners Bros.Co.* 110 Me 428, 434, 86 A. 843 (1913). In the present case, it means that if Rocque seeks relief based upon a misrepresentation by municipal officials, he himself must not be guilty of misrepresentation. Looking at the entire series of events and representations made by all parties, the representation by Rocque to the former owner of the property concerning its buildability was sufficiently muddied in purpose, though ultimately true, that Rocque is not entitled to equitable consideration of the subsequent building permit question.

For the reasons cited above, the entry will be:

Judgment for defendant on the plaintiffs' independent claim of equitable estoppel. Remanded to the China Board of Appeals.

Dated: March 14, 2005

_____
S. Kirk Studstrup
Justice, Superior Court

Date Filed __3/1/02__     __Kennebec__     Docket No. __AP02-17__

County

Action __Complaint for Review of Governmental__ Action
80B

# J. STUDSTRUP

__Michael A. Rocque Sr. & Julie E. Rocque__ vs.    __Inhabitants of the Town of China__

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Ronald W. Bourget, Esq.<br>64 State Street<br>Augusta, Maine 04330-5149 | Alton C.Stevens, Esq.<br>44 Elm Street<br>P.O. Box 708<br>Waterville, Maine 04903-708<br>~~-Michael A. Hodgins, Esq~~<br>~~160 Capitol Street~~<br>~~P.O. Box 5057~~<br>~~Augusta Maine 04332-5057~~ |

| Date of Entry | |
|---|---|
| 3/1/02 | Complaint for Review of Governmental Action, filed. s/Bourget, Esq. |
| 3/8/02 | Original Summons with return service made upon Inhabitants of the Town of China, filed.<br>Acknowledgment of Receipt of Summons and Complaint, filed. s/Stevens, Es |
| 3/25/02 | Plaintiffs' Motion for Trial of the Facts, filed. s/Bourget, Esq. (filed 3/22/02)<br>Plaintiffs' Statement of Nature of an Offer of Proof, filed. s/Bourget,<br>Plaintiffs' Motion for Extension of Time to File Record on Appeal and Briefs, filed. s/Bourget, Esq.<br>Proposed Order, filed. s/Bourget, Esq. |
| 3/26/02 | Defendant's Motion to Dismiss Independent Claims with Incorporated Memorandum, filed. s/Stevens, Esq.<br>Defendant's Motion for More Definite Statement with Incorporated Memorandum, filed. s/Stevens, Esq.<br>Request for Hearing, filed. s/Stevens, Esq.<br>Proposed Order, filed.<br>Proposed Order, filed. |
| 3/28/02 | Motion to Allow Late Motion to Specify Further Proceedings Pursuant to ME.R.CIV.P.80B(i), filed. s/Bourget, Esq.<br>Proposed Order, filed.<br>Request for Hearing, filed. s/Bourget, Esq.<br>Motion for the Court to Specify the Future Course of Proceedings, filed. s/Bourget, Esq.<br>Request for Hearing, filed. s/Bourget, Esq.<br>Proposed Order, filed. |
| 3/29/02 | Defendant's Memorandum in Opposition to Plaintiffs' Motion for Trial of the Facts, filed. s/Stevens, Esq. (attached exhibit A) |
| 4/2/02 | Amended Motion to Allow Late Motion to Specify Further Proceedings Pursuant to ME.R.CIV.P.80B(i), filed. s/Bourget, Esq.<br>Proposed Order, filed.<br>Request for Hearing, filed. s/Bourget, Esq. |