John A. JOHNSON Jr.

v.

SHAW'S DISTRIBUTION CENTER

and

Sedgwick James of Northern New England.

Supreme Judicial Court of Maine.

Argued Sept. 5, 2000.

Decided Oct. 31, 2000.

James G. Fongemie, Esq., (orally), Jeffrey Neil Young, Esq., McTeague, Higbee, Case, Cohen, Whitney & Toker, P.A., Topsham, for employee.

Mark V. Franco, Esq., (orally), Thompson & Bowie, Portland, for employer.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

SAUFLEY, J.

[¶ 1] John Johnson Jr. appeals from the decision of a Hearing Officer of the Workers' Compensation Board granting his petition for award for injuries in 1993 and 1995, but calculating ongoing partial incapacity benefits to reflect a full-time work capacity. Johnson contends that the Board erred in failing to conclude that full-time work in Johnson's community was "unavailable" during the period when Johnson was enrolled in vocational rehabilitation pursuant to an order of the Workers' Compensation Board Rehabilitation

Assistant Administrator. We affirm the decision.

## I. FACTS

[¶ 2] At the time of the hearing, Johnson was a 29–year–old college graduate with a degree in psychology. He had suffered work-related injuries to his left and right arms in 1993 and 1995 while working as a warehouse laborer for Shaw's Distribution Center. Shaw's voluntarily paid total benefits without prejudice following the injury.

[¶ 3] After his injuries, Johnson began exploring the possibility of earning a master's degree in school psychology in order to improve his earning potential. Shaw's disputed Johnson's need for additional education and a hearing was held to determine whether Johnson was entitled to rehabilitation services pursuant to 39–A M.R.S.A. § 217 (Pamph.1999). The Assistant Administrator of Rehabilitation referred Johnson to a vocational rehabilitation specialist. The specialist submitted a vocational evaluation concluding that Johnson could perform full-time work as a security guard earning approximately $120 a week, but recommending that Johnson return to school in either criminal justice or sociology/psychology. The specialist prepared a vocational rehabilitation plan, consistent with Johnson's requests, recommending a return to graduate study in psychology. Based on the specialist's recommendations, the Rehabilitation Assistant Administrator issued a "Summary Decision" ordering vocational rehabilitation consisting of full-time study at the University of Southern Maine to obtain a master's degree in psychology. *See* 39–A M.R.S.A. § 217(2) (Pamph.1999). Johnson was accepted to a two-year graduate study program at USM in the fall of 1997.[1]

[¶ 4] Johnson then filed petitions for award seeking benefits related to his 1993 and 1995 injuries. The Hearing Officer granted Johnson's petitions for award, but concluded that, notwithstanding his enrollment in full-time graduate study, Johnson failed to show that full-time work was unavailable as a result of his injury. The Hearing Officer awarded partial incapacity benefits in the amount of $272.27, based on a theoretical post-injury wage of $5.25 an hour for a forty-hour week, or $210 a week. The Hearing Officer reaffirmed its decision in response to the employee's motion for further findings of fact and conclusions of law, and we granted Johnson's petition for appellate review pursuant to 39–A M.R.S.A. § 322 (Pamph.1999).

## II. DISCUSSION

[¶ 5] Although Johnson does not actually dispute the finding that he would have been able to obtain full-time employment, he asserts that the Hearing Officer erred in two respects: first, he contends that the Hearing Officer's decision conflicts with the prior decision of the Rehabilitation Assistant Administrator ordering the implementation of a rehabilitation plan, and thus is barred by principles of res judicata; and second, he contends that the Board's conclusion that full-time work is available to him, even though he is enrolled and active in vocational rehabilitation, is inconsistent with the purposes and policy of vocational rehabilitation, and therefore could not have been within the contemplation of the Legislature. We reject both contentions.

### A. Res judicata

[¶ 6] Res judicata bars the relitigation of " 'an entire cause of action.' " *Johnson v. Samson Constr. Corp.*, 1997 ME 220, ¶ 6, 704 A.2d 866, 868 (quoting

---

1. We have previously addressed section 217 in only one case, *McAdam v. United Parcel Serv.*, 2000 ME 5, ¶ 6, 743 A.2d 741, 743, in which we held that, pursuant to the language of subsection 217(2), which provides that the Board's determination of a plan is "final," an employer cannot appeal a decision of the Re-

habilitation Assistant Administrator ordering the implementation of a plan until, and unless, the employer is ultimately ordered to pay the costs following the employee's successful completion of the plan. *Id.* (citing 39–A M.R.S.A. § 355(7) (Pamph.1999)).

*Beegan v. Schmidt,* 451 A.2d 642, 644 (Me. 1982)). The doctrine applies only when: "(1) the same parties or their privies are involved in both actions; (2) a valid final judgment was entered in the prior action; (3) the matters presented for decision in the second action were, or might have been, litigated in the first action," *Dep't of Human Servs. v. Comeau,* 663 A.2d 46, 48 (Me.1995); and (4) both cases involve the same cause of action, *Camps Newfound/Owatonna Corp. v. Town of Harrison,* 1998 ME 20, ¶ 11, 705 A.2d 1109, 1113.

[¶ 7] Here, the decisions at issue do not meet the requirements of the third or fourth element. The matters presented for decision by the Hearing Officer are entirely different from the matters addressed by the Rehabilitation Assistant Administrator, and in neither forum could Johnson have obtained the relief sought in the other forum.

[¶ 8] The statutory obligation of the Hearing Officer is to determine an employee's "capacity to earn" for purposes of awarding benefits. The applicable statutes providing entitlement to partial incapacity benefits are 39–A M.R.S.A. §§ 213 and 214 (Pamph.1999). Pursuant to subsection 213(1), the Hearing Officer must award "a weekly compensation equal to 80% of the difference between the injured employee's after-tax average weekly wage before the personal injury and the after-tax average weekly wage that the injured employee is *able to earn* after the injury." 39–A M.R.S.A. § 213(1) (Pamph.1999) (emphasis added).

[¶ 9] The responsibility of the Rehabilitation Assistant Administrator, in contrast, is to determine an employee's eligibility for vocational rehabilitation, and, in appropriate cases, to order implementation of a rehabilitation plan that is reasonably necessary to return the employee to "suitable employment." 39–A M.R.S.A. § 217.[2] The Rehabilitation Administrator is not required or authorized to act pursuant to section 213, and the Hearing Officer is not authorized to consider or implement a rehabilitation plan pursuant to section 217.

[¶ 10] Because the Rehabilitation Assistant Administrator and the Hearing Officer perform different functions pursuant to the Act, their functions are not interdependent and their results may occasionally appear to conflict. The conflict exists only in appearance, however, and not in the execution. The decision of the Rehabilitation Assistant Administrator to implement a vocational rehabilitation plan is not equivalent to a determination of an employee's "ability to earn." Nor is the Hearing Officer's determination of the employee's ability to earn in actual conflict with a rehabilitation plan that would make it possible for the employee to obtain future earnings at a higher rate.

[¶ 11] The Assistant Rehabilitation Administrator's finding that Johnson is entitled to full-time vocational rehabilitation did not preclude the Hearing Officer from making an independent determination regarding Johnson's earning capacity as a matter of res judicata.

**B. Availability of Employment**

[¶ 12] Johnson next challenges the Hearing Officer's finding that work is available to him, notwithstanding his enrollment in the rehabilitation program. Traditionally, an employee's earning capacity has been evaluated according to (1) the employee's physical capacity, (2) the availability of employment in his local community, and (3) other nonwork-related factors affecting employability, such as age, training, education, work history, etc. *See, e.g., Dailey v. Pinecap, Inc.,* 321 A.2d 492, 496 (Me.1974). Pursuant to the so-called

---

**2.** The Assistant Rehabilitation Administrator and the Hearing Officer were in agreement in the present case that Johnson has a work capacity to earn at least half of his pre-injury wage. Nevertheless, the Rehabilitation Assistant Administrator ordered vocational rehabilitation based on his belief that rehabilitation was reasonably necessary and appropriate to return Johnson to suitable employment.

"work search rule," an employee with a partial physical capacity can prove entitlement to 100% partial incapacity benefits by showing that work in the employee's local community is unavailable due to the work injury.[3] *Bureau v. Staffing Network, Inc.,* 678 A.2d 583, 588 (Me.1996).

[¶ 13] Johnson contends that, although he might be physically capable and otherwise qualified to perform and obtain work, full-time work is "unavailable" to him due to his full-time enrollment in school. The Hearing Officer, however, interpreted "available employment" according to its traditional meaning, i.e., the ability of the employee to obtain and perform available work in the relevant labor market, without regard to Johnson's enrollment in vocational rehabilitation.

[¶ 14] Johnson concedes that there is no express language in the Act prohibiting a Hearing Officer from ordering partial benefits during the implementation of a vocational rehabilitation plan, nor is there any authority from this Court requiring a Hearing Officer to regard work as unavailable during times when an employee is enrolled in vocational rehabilitation. We cannot conclude that the Hearing Officer's application of the law is error in the absence of statutory or judicial authority requiring a different result, nor do we find sufficient evidence of legislative intent in this regard to require further modification of the traditional "availability" analysis.[4]

[¶ 15] Johnson next contends that the goals of vocational rehabilitation will be thwarted if employees are required to choose between employment and vocational rehabilitation. We do not agree, nor do we agree that the Hearing Officer's interpretation leads to absurd results.

[¶ 16] It is important to understand exactly what the employee seeks here. The parties do not dispute that during a rehabilitation program, the employer will remain responsible for benefits to which the employee is entitled as a result of the reduction in his wages resulting from the injury. The employee argues that, in addition to those benefits, he is entitled to benefits representing his lost earnings while he is engaged in the rehabilitation program. In essence, the employee asks us to declare that the employer is responsible for paying wage replacement to the employee for the hours of his studies. There simply exists no statutory authority for this proposition.

[¶ 17] Those employees with severe or totally incapacitating injuries who are unable to perform available work in the local labor market, and those for whom there actually exists little or no available employment in the community, will continue to receive total or relatively high levels of partial incapacity benefits while pursuing vocational rehabilitation. Only those employees like Johnson, with lesser degrees of partial incapacity, who continue to have substantial work opportunities in their local communities without vocational rehabilitation, are affected by the statute as it is written. The reduction in income will result in such cases, not from the injury or its sequelae, but from the employee's choice to remove himself from the labor market during his efforts to improve his future earning opportunities.[5]

3. The employee's physical ability to perform full-time work in the statewide labor market, regardless of availability, may also affect the employee's entitlement to benefits for total incapacity. *See Lamphier v. Bath Iron Works Corp.,* 2000 ME 121, ¶¶ 9–10, 755 A.2d 489, 493–94 (interpreting former 39 M.R.S.A. § 55–B (Supp.1991) (applicable to injuries occurring after October 17, 1991, and before January 1, 1993), *repealed by* P.L.1991, ch. 885, § A–7); *Adams v. Mt. Blue Health Ctr.,* 1999 ME 105, ¶ 17, 735 A.2d 478, 483 (inter-preting former 39 M.R.S.A. § 54–B (1989) (applicable to injuries occurring after November 20, 1987, and before October 17, 1991), *amended by* P.L.1991, ch. 615, § D–6).

4. As a practical matter, work is not "unavailable" to Johnson. Employment can often be combined with a substantial course of study.

5. The Hearing Officer found that Johnson was capable of earning $5.25 an hour and that his work search was insufficient to demonstrate

██ [¶ 18] In any case, employees enrolled in a rehabilitation plan will receive no less in benefits during the period of vocational rehabilitation than they would receive in the absence of vocational rehabilitation. It would not be unreasonable for the Legislature to conclude that the employer should not bear the burden of subsidizing lost income resulting from enrollment in vocational rehabilitation.

The entry is:

Decision of the Workers' Compensation Board affirmed.

that there was no work within his physical capacity available to him in the competitive labor market.