MAINE SUPREME JUDICIAL COURT                     Reporter of Decisions
Decision:     2014 ME 54
Docket:       Yor-13-350
Submitted
 On Briefs:   February 27, 2014
Decided:      April 8, 2014

Panel:        ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

IN RE M.S.

LEVY, J.

[¶1]  The mother and father of M.S. appeal from a judgment entered in the District Court (York, *Foster, J.*) terminating their parental rights pursuant to 22 M.R.S. § 4055 (2013).  The father contends that the court erred in excluding testimony regarding his relationship with his daughter, M.S.'s half-sister.  Both parents also challenge the sufficiency of the evidence.  We affirm the judgment.

I.  BACKGROUND

[¶2]  Over the course of one weekend in March 2012, police were repeatedly called to the parents' home in response to a prolonged verbal confrontation between them that occurred while M.S. and M.S.'s half-sister were present.  M.S. was two years old at the time.  The mother's erratic behavior during the weekend was caused, at least in part, by her use of bath salts that the father had provided to her.  At one point during the weekend, the father left the house, leaving the mother—who has a history of mental health and substance abuse issues—alone

with M.S. Before the father returned home, a relative entered the house, found M.S. sitting unattended in a full bathtub with the water running, and took the child into her care. Soon after that, the father called DHHS to report that the mother posed a danger to M.S.

[¶3] In response, the Department sought and obtained an ex parte preliminary protection order and removed M.S. from the home. The parents waived their rights to a summary preliminary hearing and subsequently agreed to the court's entry of a jeopardy order as to both parents. The order found that jeopardy arose from the mother's "inability to provide adequate care and supervision to the child and risk of physical harm to the child due to her mental health issues and history of using illegal substances," and the father's "failure to protect the child from the risk of harm posed by the mother's substance abuse as well as his own contribution to the jeopardy posed due to his providing illegal drugs to the mother and using illegal drugs with [her]."

[¶4] An assessment of M.S. soon revealed that he was cognitively delayed, overly aggressive, and disliked physical affection. Although a social worker successfully worked with M.S. and his foster parents to improve his behavior, M.S. will need a caretaker who is able to access necessary services and provide a stable and predictable environment for him.

[¶5]   In the summer of 2012, the mother—who had been convicted of aggravated trafficking in scheduled drugs in August 2011—began serving a one-year sentence at the Maine Correctional Center.  Despite being informed on numerous occasions about the substance abuse and mental health services available in prison, the mother only completed one brief program during her incarceration. The mother denied having a substance abuse problem or needing to improve her parenting skills, describing herself as a "great parent," and expressed no interest in obtaining her GED.  The mother also had only one supervised visit with M.S. since beginning her sentence, after which the child's behavior regressed and he experienced severe nightmares.  Upon her release, the mother moved back in with the father.  Shortly thereafter, against the express directives of DHHS, the father brought M.S. to their home to have several hours of unsupervised contact with the mother.

[¶6]  In October 2012, the Department filed a petition for termination of both parents' parental rights, alleging that the mother had failed to take responsibility for her mental health issues, her substance abuse, and her abusive relationship with the father.  The petition further alleged that the father had failed to protect the child from the risk of harm posed by the mother.  The court (*Foster, J.*) conducted a two-day hearing on the Department's petition in June of 2013.  At the hearing, caseworkers from DHHS and the Maine Correctional Center testified that the

4

mother had not undertaken any efforts to address the jeopardy identified at the commencement of the proceedings. The court also received testimony regarding the father's inability to extricate himself from the abusive relationship with the mother and his failure to appreciate the risk she poses to M.S. For example, the father continued to express disbelief that the mother had left the child alone in a full bathtub. The father also acknowledged that he had allowed the mother to move back in with him upon her release from prison, and that he had brought M.S. to have several hours of unsupervised contact with her even though he knew that such contact was prohibited by the Department.[1] The father also failed to work with the child's social worker, who had offered to help the father address the child's negative behaviors.

[¶7]    In addition, at the hearing the father's counsel sought to elicit testimony from a DHHS caseworker concerning the positive quality of the father's relationship with his daughter, M.S.'s half-sister, who resides with her mother. Upon the Department's objection, the court excluded the testimony as irrelevant because there did not exist an outstanding jeopardy order as to the daughter. Later in the hearing, the father testified without objection regarding his relationship with

---

[1] The evidence indicated that the father's inability to end his relationship with the mother is a result, at least in part, of his need for the mother's Social Security income to pay the mortgage on his home.

the daughter, his unsupervised visits with her and M.S., and the fact that the children are close.

[¶8]   The court entered a judgment on June 27, 2013, terminating both parents' parental rights to M.S.  The court found that the parents were unwilling or unable to protect M.S. from jeopardy or take responsibility for M.S. within a time reasonably calculated to meet his needs, *see* 22 M.R.S. § 4055(1)(B)(2)(b)(i)-(ii), and had failed to make a good faith effort to rehabilitate and reunify with M.S., *see id.* § 4055(1)(B)(2)(b)(iv).  The court also determined that termination is in M.S.'s best interest.  *See id.* § 4055(1)(B)(2)(a).  This appeal followed.

## II.  DISCUSSION

A.    The Court's Exclusion of Testimony Regarding the Father's Relationship with His Daughter

[¶9]  The father first contends that the court erred in excluding the testimony of a DHHS caseworker regarding the father's care for his daughter from a prior relationship.  The court reasoned that the father's care for his daughter was irrelevant to his ability to parent M.S. because there existed no jeopardy order as to the daughter.

[¶10]  We review a court's determination regarding relevance for clear error. *State v. Roberts*, 2008 ME 112, ¶ 21, 951 A.2d 803.  Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the

determination of the action more probable or less probable than it would be without the evidence." M.R. Evid. 401. This standard for relevance is a low one. *See State v. LeBlanc*, 559 A.2d 349, 352 (Me. 1989) (referring to the standard of relevance as "minimal"); *see also United States v. Tinoco*, 304 F.3d 1088, 1120 (11th Cir. 2002) ("The standard for what constitutes relevant evidence is a low one . . . ."); *State v. Sladek*, 835 S.W.2d 308, 314 (Mo. 1992) (en banc) (Thomas, J., concurring) ("This is a very low-level test that is easily met.").

[¶11] Measured against the low standard for relevance, the exclusion of the caseworker's testimony regarding the father's care for and relationship with his daughter was clear error. According to the guardian ad litem, the father's family reported that the father "has had a loving relationship with his daughter since [her] birth." The daughter and M.S. regularly visited each other under the father's supervision and, in the opinion of the guardian ad litem, "this sibling relationship should be maintained, encouraged, and supported by the Department throughout this process." Thus, the excluded testimony was relevant to the court's determinations regarding M.S.'s best interest and the father's ability to act as a fit parent. *See* 22 M.R.S. § 4055(1)(B)(2)(a)-(b). That the daughter was not subject to an outstanding jeopardy order is of no consequence.

[¶12] Although we conclude that the court's exclusion of the evidence was error, the error was harmless. *See* M.R. Civ. P. 61. In the context of a termination

of parental rights proceeding, a preserved error is harmless if "it is highly probable that the error did not prejudice the parents or contribute to the result in the case." *In re Scott S.*, 2001 ME 114, ¶ 29, 775 A.2d 1144. On the second day of the hearing, the father testified without objection regarding his relationship with his daughter, the relationship between the daughter and M.S., and his ability to care for both children. Because it is highly probable that the court's error had no prejudicial effect and did not affect the outcome of the case, the error was harmless. *See id.* ¶¶ 29-30.

B.     Whether Sufficient Evidence Supported the Termination of the Parents'
       Parental Rights

[¶13] Both parents also challenge the sufficiency of the evidence supporting the court's finding, by clear and convincing evidence, that the parents are unfit pursuant to 22 M.R.S. § 4055(1)(B)(2)(b). "When reviewing sufficiency challenges for clear and convincing evidence, we examine whether the trial court could have reasonably been persuaded on the basis of evidence in the record that the required factual findings were highly probable." *In re Annie A.*, 2001 ME 105, ¶ 19, 774 A.2d 378 (quotation marks omitted). Accordingly, "if rational or competent support in the record exists for the District Court's findings, we must sustain them." *Id.* (quotation marks omitted). Proof of any one of the four statutory definitions of parental unfitness set out at 22 M.R.S. § 4055(1)(B)(2)(b)

will justify termination if supported by clear and convincing evidence. *In re Charles G.,* 2001 ME 3, ¶ 6, 763 A.2d 1163.

[¶14] With respect to the mother, there is ample competent evidence that she does not recognize the threat that her mental health issues and substance abuse pose to the child; has not seriously engaged in services, substance abuse treatment, or mental health counseling since the commencement of this case; and has not made any meaningful efforts to reunify with M.S. With respect to the father, competent evidence demonstrates that he fails to understand the emotional and physical risk that the mother poses to the child, and is incapable of ending his relationship with her despite his understanding that his failure to do so will effectively prevent him from regaining custody of M.S. The father's failure to work with a social worker to remedy M.S.'s behavioral issues further demonstrates his inability to meet his son's needs. For these reasons, competent evidence supports the court's finding, by clear and convincing evidence, of at least one ground of parental unfitness as to each parent. *See id.* ¶¶ 5-6.

[¶15] In addition, the father contends that the court erred or abused its discretion in determining that termination of his parental rights would be in the best interest of the child. *See* 22 M.R.S. § 4055(1)(B)(2)(a). We review the court's factual findings related to the child's best interest for clear error, and its ultimate conclusion regarding the child's best interest for abuse of discretion. *In re*

*Thomas H.*, 2005 ME 123, ¶ 16, 889 A.2d 297. Here, the court's finding that the father "remains enmeshed in a relationship with a mentally and emotionally abusive partner, despite understanding what that means for regaining custody of his son," was not clear error. The court likewise did not abuse its discretion in concluding that terminating the father's parental rights would be in M.S.'s best interest. *See id.*

[¶16] We find no merit in the father's remaining contentions and do not address them separately.

The entry is:

> Judgment affirmed.

---

**On the briefs:**

Lisa D. Chmelecki, Esq., Fairfield & Associates, Lyman, for appellant mother

Thomas P. Elias, Esq., Elias Law Office, York, for appellant father

Janet T. Mills, Attorney General, and Nora Sosnoff, Asst. Atty. Gen., Office of Attorney General, Augusta, for appellee Department of Health and Human Services

York District Court docket number PC-2012-2
FOR CLERK REFERENCE ONLY