MAINE SUPREME JUDICIAL COURT                                   Reporter of Decisions
Decision:       2015 ME 93
Docket:         Cum-14-476
Submitted
 On Briefs:     July 1, 2015
Decided:        July 28, 2015

Panel:          SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, and JABAR, JJ.

IN RE I.R.

PER CURIAM

[¶1]   The mother of I.R. appeals from a judgment of the District Court (Portland, *Powers, J.*) terminating her parental rights to the child pursuant to 22 M.R.S. § 4055(1)(B)(2) (2014).   The mother argues that there is insufficient evidence in the record to support the court's findings, by clear and convincing evidence, of at least one ground of parental unfitness.   We affirm the judgment.

## I.  BACKGROUND

[¶2]   The record supports the following findings of the court by clear and convincing evidence.  *See In re M.S.*, 2014 ME 54, ¶ 13, 90 A.3d 443.

[¶3]   The mother suffers from a significant mental illness.   Due to concerns about the effect of that illness on her mental capacity, the court assigned the mother her own guardian ad litem in these proceedings.   The mother spent time in psychiatric facilities in 2013 and 2014, and has a history of suicidal thoughts.   The mother lived in multiple states while this case was pending.

2

[¶4]   The Department of Health and Human Services initiated child protection proceedings concerning I.R. in 2012, while he was still in the hospital after having been born two months premature.  The Department alleged that the mother has schizo-affective disorder, for which she does not consistently take her medication; in the forty days the child spent in the hospital after his birth, the mother spent very little time with him and did not understand the nature of the child's needs or the seriousness of his medical condition; and the mother had agreed that she was uncomfortable caring for the child alone.[1]  The mother later agreed to a finding of jeopardy concerning the child based on her untreated mental health issues, her inability to care for the child's daily needs, her inability to care for the child's particular medical and developmental needs, and her lack of overall stability.  *See* 22 M.R.S. §§ 4002(6), 4035 (2014).

[¶5]  Since child protection proceedings began, the mother has not engaged in any reunification services, including mental health counseling or parenting education.  The mother also has not visited the child with any consistency; in the summer of 2014, for example, she saw him six times.  During those visits, the mother did not interact with the child, and the court found that she has no "real relationship" with him.

---

[1]  The father does not appeal from the termination of his parental rights.

[¶6]   In 2014, the Department filed a petition to terminate the mother's parental rights, alleging that the mother has a history of command auditory hallucinations and suicidal ideation; has a history of substance abuse; while pregnant again, was admitted to a hospital in Massachusetts due to her reports of auditory hallucinations and suicidal statements; moved to Maryland without notifying the Department of her move; had no contact with her child for five months after she left Maine; has not engaged in any mental health treatment or reunification services; has no stable housing; does not engage with the child during the visits she does have with the child, and instead watches him and makes no attempt to interact with him; and has no ability to care for the child.  The court conducted a testimonial hearing on the termination petition.  The mother did not testify at the hearing, but did stipulate to her mental health issues and her failure to participate in various Department services.

[¶7]   During the hearing, the court discussed its recent receipt of two letters from the child's maternal grandmother, who was neither a party nor an intervener in the proceeding.  In one of those letters, the grandmother purported to inform the court that the mother and the child were members of the Seminole tribe, and attempted to obtain custody over the child pursuant to the Indian Child Welfare Act (ICWA), 25 U.S.C.S. §§ 1901-1963 (LEXIS through P.L. 114-25, approved 6/15/15).  The Department responded that, in January of 2013, when it had first

4

learned of this claim, it had contacted both the Seminole Tribe of Florida and the Seminole Nation of Oklahoma. Both responded to the Department's inquiry by reporting that there was no record of enrollment of the parents or the child in the Seminole tribe or nation. The Department had also contacted the Penobscot Nation, but had received no response. Based on this information, the court correctly declined to apply the ICWA to this matter.

[¶8] The court terminated the mother's parental rights to the child on grounds that she is unwilling or unable to protect the child from jeopardy, is unwilling or unable to take responsibility for the child within a reasonable time, and failed to make a good faith effort to rehabilitate and reunify with the child, and that termination is in the best interest of the child. *See* 22 M.R.S. § 4055(1)(B)(2). The mother appeals. *See* 22 M.R.S. § 4006 (2014).

[¶9] The child is now three years old and has been with his foster family since he left the hospital shortly after his birth. He suffers from a chronic lung disease, a hip condition, and motor skills problems, all of which require frequent treatment and/or therapy. Although all of his conditions have been improving, the child requires a healthy parent who can meet his daily physical and emotional needs, as well as his greater medical needs, and who can provide safe and stable housing. The foster parents who are currently caring for the child and providing for all of his needs wish to adopt him.

## II.  DISCUSSION

[¶10]  The mother challenges the sufficiency of the evidence supporting the court's findings of parental unfitness.  She argues that although there was sufficient evidence of her deficits, the court erred in failing to consider whether or how those deficits affect her ability to parent the child.  In particular, the mother argues that there was no evidence that, with family or community support, she could not appropriately parent the child.[2]

[¶11]  Contrary to the mother's suggestion, there was sufficient evidence to support the court's judgment by clear and convincing evidence, including its findings that the mother's deficits—and particularly her mental illness—affected her ability to parent.  Specifically, there was evidence that she has never cared for the child since his birth, lacks any understanding of the child's needs, is subjectively uncomfortable around him, fails to interact with him during visits, and failed to make any efforts to rehabilitate and reunify with him.  There was also sufficient evidence to support the court's finding that termination is in the best interest of the child, i.e., that the child has particular medical and emotional needs that the mother is unable to understand or satisfy, and that the foster parents—who

---

[2]  The mother also challenges the court's alleged failure to consider a kinship placement for the child.  *See* 22 M.R.S. § 4003(3-A) (2014).  The placement she suggested—her own mother—was carefully considered by the Department, the guardian ad litem, and the court early in these proceedings, and was found to be completely inappropriate.  This argument is not persuasive and we do not discuss it further.

wish to adopt the child—have cared for those needs well since shortly after the child's birth. *See* 22 M.R.S. § 4055(1)(B)(2); *In re M.S.*, 2014 ME 54, ¶¶ 13, 15, 90 A.3d 443.

The entry is:

> Judgment affirmed.

---

**On the briefs:**

Erika S. Bristol, Esq., Auburn, for appellant mother

Janet T. Mills, Attorney General, and Meghan Szylvian, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Portland District Court docket number PC-2012-72
FOR CLERK REFERENCE ONLY