MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2018 ME 66
Docket:      Pen-17-386
Argued:      February 15, 2018
Decided:     May 8, 2018

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

## GUARDIANSHIP OF ELLA M. GRENIER

JABAR, J.

[¶1]  Nicole Grenier, the mother of Ella M. Grenier, appeals from a judgment entered by the Penobscot County Probate Court (*R. Bradford, J.*) granting the petition of Ella's maternal grandmother, Tammy Hopkins, for temporary guardianship pursuant to 18-A M.R.S. §§ 5-204(c), 5-207(c) (2017). Nicole contends that the evidence does not support the court's finding of a temporarily intolerable living situation for Ella.  We agree and vacate the judgment.

### I.  BACKGROUND

A.    Procedural History

[¶2]  In April 2016, Tammy Hopkins and her husband, Marlyn Hopkins, filed a petition for guardianship of Tammy's maternal granddaughter, Ella.  In October 2016, by agreement between Nicole, Tammy, and Marlyn, the court entered an interim order granting temporary placement of Ella with Tammy

2

and Marlyn. The court then entered another interim, agreed-upon order in February 2017, maintaining that arrangement.

[¶3] On July 11, 2017, at the hearing on the petition for guardianship, the court observed at the outset that Marlyn had not appeared for the proceedings.[1] The court then heard testimony from Tammy; Nicole; and Ella's guardian ad litem, Earl Brown, Esq. After the hearing, the court issued the judgment that is the subject of this appeal. Without making any findings of fact, the court granted Tammy's petition and concluded that she had proved, by clear and convincing evidence, that a temporarily intolerable living situation for Ella existed as to Nicole, and that Tammy would provide a living situation that was in Ella's best interest.

B.     Motion for Findings

[¶4] Four days after the judgment was entered, Nicole filed a motion for findings of fact and conclusions of law pursuant to M.R. Civ. P. 52(a). *See* M.R. Prob. P. 52 (providing that M.R. Civ. P. 52 applies in probate proceedings). The

---

[1] Tammy testified that Marlyn elected not to attend the hearing because "he wants it to be my decision because I'm the one stuck between my daughter and granddaughter, and he thought I should make that decision, not him." Accordingly, the court held in its order that "the evidence supports a finding of default and a denial as to his being appointed co-guardian."

court then issued findings of fact and conclusions of law that included, in relevant part, the following:

4. Nicole has lived with her mother and step-father at various times during the course of this litigation but at the time of the hearing was living on her own with her children, outside her mother and step-father's home.

. . . .

6. Approximately two months prior to the hearing in this case on July 11, 2017, petitioner Tammy Hopkins requested that Nicole and both her children leave her home because of conflict between Nicole and petitioner Marlyn Hopkins. That conflict involved physical confrontation between Nicole and Marlyn Hopkins, in front of both children, and that conflict was upsetting to Ella. Petitioner Tammy Hopkins removed a crying Ella from the area of conflict.

7. Marlyn Hopkins consumes amounts of alcohol daily and sometimes his alcohol use increases his anger, irritability and abusive behavior against Nicole, according to the testimony of both Nicole and his wife Tammy.

. . . .

9. The presence of Marlyn Hopkins in petitioner Tammy Hopkin[s]'s environment does not by itself render Tammy's home unsafe and not appropriate to the residence of Ella.

10. Nicole has experienced periods of instability in her life. Nicole's home is not appropriate in the view of the guardian *ad litem* and the GAL's concerns relate primarily to the amount of time that Nicole has been in the environment as well as the presence of at least one pit bull dog. Nicole testified that her intention is to stay in the environment and she has no plans to move. The Court

concludes, on the evidence presented, that Nicole's environment is "temporarily intolerable."

11. At the time of the hearing Nicole was living with both her children and there was evidence to suggest that her living situation created a risk for Ella. This Court concludes that Tammy Hopkins'[s] (but not Marlyn Hopkins'[s]) petition for guardianship as the proposed guardian has met her burden to demonstrate, by clear and convincing evidence, that Nicole's current living situation creates an environment that is "temporarily intolerable" for Ella.

Nicole timely appealed from the judgment. *See* 18-A M.R.S. § 1-308 (2017); M.R. App. P. 2B(c)(2)(B).

## II. DISCUSSION

[¶5] Nicole argues that the record lacks sufficient evidence to support the court's finding that her living situation is "temporarily intolerable" for Ella. Title 18-A M.R.S. § 5-204(c) provides, in pertinent part,

The court may appoint a guardian or guardians for an unmarried minor if . . . the court finds by clear and convincing evidence that . . . a living situation has been created that is at least temporarily intolerable for the child even though the living situation does not rise to the level of jeopardy required for the final termination of parental rights, and that the proposed guardian will provide a living situation that is in the best interest of the child . . . .

18-A M.R.S. § 5-204(c). Although section 5-204(c) does not define the term "temporarily intolerable . . . living situation," our "construction of that term is informed . . . by the fundamental liberty interest parents have in parenting their children." *Guardianship of Jewel M.* (*Jewel I*), 2010 ME 17, ¶ 12, 989 A.2d 726.

All parents have "a fundamental liberty interest in the care, custody, and control of [their] child[ren] that is entitled to constitutional protection." *Guardianship of Thayer*, 2016 ME 52, ¶ 22, 136 A.3d 349. For that reason, "[t]he government may interfere with this familial relationship only through procedures that satisfy the rigors of the Due Process Clause, which necessarily include the establishment of a compelling government interest related to the welfare of the child." *Id.* Due to the important fundamental interest at stake, "we have limited the State's intrusions into the parent-child relationship to those instances in which there is some urgent reason or there are exceptional circumstances affecting the child that justify the intrusion." *Pitts v. Moore*, 2014 ME 59, ¶ 12, 90 A.3d 1169 (footnote omitted).

[¶6] This means that a parent's interest in parenting his or her child "may not be infringed simply by proof that a grandparent might provide a 'better' living arrangement for the child." *Guardianship of Jewel M.* (*Jewel II*), 2010 ME 80, ¶ 9, 2 A.3d 301. Rather, "[b]ecause a temporarily intolerable living situation must relate to a parent's inability to care for the child, proof of parental unfitness is a required element to support the establishment of a guardianship over the parent's objection." *Jewel I*, 2010 ME 17, ¶ 12, 989 A.2d 726. "Accordingly, a guardianship may only be ordered pursuant to section 5-204(c)

6

if the court finds that (1) the parent is currently unable to meet the child's needs and that inability will have an effect on the child's well-being that may be dramatic, and even traumatic, if the child lives with the parent, and (2) the proposed guardian will provide a living situation that is in the best interest of the child." *Id.* ¶ 13.

A.    Standard of Review

[¶7]  Where a motion for findings of fact has been filed pursuant to M.R. Civ. P. 52(a), "we review the original findings and any additional findings made in response to the motion for findings to determine if they are sufficient, as a matter of law, to support the result and if they are supported by the evidence in the record." *Bayberry Cove Childrens' Land Tr. v. Town of Steuben*, 2013 ME 35, ¶ 5, 65 A.3d 1188 (quotation marks omitted).  Because the court was presented with a proper Rule 52(a) motion, we will not infer that the court made any findings other than the ones it actually articulated.  *See Tucker v. Associated Grocers of Me., Inc.*, 2008 ME 167, ¶ 29, 959 A.2d 75.

[¶8]  "When reviewing sufficiency challenges for clear and convincing evidence, we examine whether the trial court could have reasonably been persuaded on the basis of evidence in the record that the required factual findings were highly probable." *In re M.S.*, 2014 ME 54, ¶ 13, 90 A.3d 443

(quotation marks omitted). The "court's findings in support of a guardianship, reached by clear and convincing evidence, are reviewed for clear error." *In re Guardianship of Hailey*, 2016 ME 80, ¶ 15, 140 A.3d 478. "A finding of fact is clearly erroneous when (1) no competent evidence supporting the finding exists in the record; (2) the fact-finder clearly misapprehends the meaning of the evidence; or (3) the force and effect of the evidence, taken as a whole, rationally persuades us to a certainty that the finding is so against the great preponderance of the believable evidence that it does not represent the truth and right of the case." *Jewel I*, 2010 ME 17, ¶ 14, 989 A.2d 726.

B.     Parental Unfitness

[¶9]   Nicole contends that the court's finding that her environment is "temporarily intolerable" is not supported by clear and convincing evidence, but rather that the evidence established she "is doing well, as both her mother and the [guardian ad litem] acknowledge[,] and has been doing well for some time." This case raises an issue we recently contemplated in *Thayer*, 2016 ME 52, ¶¶ 17-27, 136 A.3d 349—the manner in which a court may consider a parent's past actions when determining current parental unfitness. In *Thayer*, the appellant father was on probation for drug-related crimes for the first nine months of his daughter's life and, because he lived in Colorado, only saw her

8

twice during that period of time. *Id.* ¶ 2. After moving to Maine, the father "maintained an irresponsible existence that consisted of drinking; smoking marijuana; and, at times, driving while under the influence with [his daughter] in the vehicle." *Id.* ¶¶ 3-4. The daughter's maternal grandparents petitioned for guardianship of her, claiming that the father demonstrated a lack of consistent participation in her life within the meaning of 18-A M.R.S. § 5-204(d) (2017).[2] *Thayer*, 2016 ME 52, ¶ 5, 136 A.3d 349. Prior to the hearing, the father "allowed [his daughter's] health issues to worsen through neglect," and after taking his daughter from her maternal grandparents, "the father continued to demonstrate limited job-retention skills and failed to secure stable, independent housing for himself and his daughter." *Id.* ¶ 6.

[¶10] Responding to the father's argument that the court was not permitted to consider his past lack of participation when determining "consistent participation," *id.* ¶ 21, we concluded that, although the standard is whether the parent is unfit "at the time of the hearing," *id.* ¶ 25, the trial court had "correctly and appropriately considered both the father's past actions and his recent actions in determining that he is currently unfit," *id.* ¶ 27.

---

[2] Title 18-A M.R.S. § 5-204(d) (2017) provides that a court may appoint a guardian for an unmarried minor if it "finds by clear and convincing evidence that there is a de facto guardian and a demonstrated lack of consistent participation by the nonconsenting parent."

Specifically, we affirmed the court's consideration of its findings "that the father demonstrated a lack of consistent participation in [his daughter's] life during the time that she lived with the maternal grandparents, and that *the father remained unable to care for [his daughter] at the time of the hearing on the petition*." *Id.* (emphasis added).

[¶11]  Turning to the case at hand, the court's factual findings do not, as a matter of law, support a determination that Nicole is "currently unable to meet the child's needs and [that] that inability will have an effect on the child's well-being that may be dramatic, and even traumatic, if [Ella] lives with [Nicole]." *Jewel I*, 2010 ME 17, ¶ 13, 989 A.2d 726; *see Bayberry Cove*, 2013 ME 35, ¶ 5, 63 A.3d 1188.  The court made only the following findings in regard to parental unfitness: (1) "Nicole has experienced periods of instability in her life"; (2) "Nicole's home is not appropriate in the view of the guardian *ad litem* and the GAL's concerns relate primarily to the amount of time that Nicole has been in the environment as well as the presence of at least one pit bull dog"; and (3) "Nicole testified that her intention is to stay in the environment and she has no plans to move."

[¶12]  Accordingly, unlike in *Thayer*, where the court supported its finding of current parental unfitness by referencing *specific* findings of past

unfitness—thereby employing that past unfitness to inform the father's lack of consistent participation at the time of the hearing—the court here made only the nebulous finding that, in the past, "Nicole has experienced periods of instability in her life." This finding does little to inform the court's finding that, at the time of the hearing, "Nicole's home is not appropriate in the view of the guardian *ad litem* . . . primarily [due] to the amount of time that Nicole has been in the environment." Thus, it is unclear why, in the court's view, Nicole's lack of time in her present environment rendered her an unfit parent.

[¶13] Absent clarifying findings of past unfitness, the court's finding that a temporarily intolerable situation existed as to Nicole rests on (1) its recitation that her home was not appropriate—in the view of the guardian ad litem—due to both the limited amount of time she had been there and the existence of at least one pit bull dog;[3] and (2) Nicole's testimony that she intended to stay at that home. These reasons are insufficient, as a matter of law, to justify an intrusion into Nicole's fundamental liberty interest in the care, custody, and control of her child. Moreover, we may not infer that the court made additional findings necessary to support it judgment. *See Tucker*, 2008 ME 167, ¶ 29,

---

[3] The guardian ad litem did not offer any testimony that the dogs displayed violent characteristics, and the court properly sustained an objection to the question, posed by Tammy's counsel to the guardian ad litem, "[B]ased on your experience, do you have concerns about pit bull dogs?"

959 A.2d 75; *see also Cyr v. Cyr*, 432 A.2d 793, 796 (Me. 1981) ("[F]indings of fact and conclusions of law under Rule 52(a) serve to make definite what was decided in the case."). Examining the sufficiency of the court's findings within the four corners of its order, therefore, we conclude that those findings do not support the conclusion necessary to order a guardianship.

[¶14] Furthermore, we also consider whether—independent of the sufficiency of the court's stated findings to support its order and even in the absence of a proper Rule 52(a) motion—this record contains sufficient evidence of Nicole's parental unfitness such that the court "*could have reasonably been persuaded on the basis of evidence in the record that* [a temporarily intolerable living situation was] highly probable." *See In re K.M.*, 2015 ME 79, ¶ 9, 118 A.3d 812 (emphasis added) (quotation marks omitted). We conclude, based on the evidence, that it does not. This case is entirely unlike *Thayer*, where the court tied its findings of *past* parental unfitness together with such findings of *recent* unfitness as, "[w]hile the petition was pending, the father allowed [his daughter's] health issues to worsen through neglect." 2016 ME 52, ¶ 6, 136 A.3d 349. Given the overwhelming record evidence that Nicole was a fit parent at the time of the hearing, the court's finding to the contrary is clearly erroneous, as it "is so against the great preponderance of the

believable evidence that it does not represent the truth and right of the case." *Jewel I*, 2010 ME 17, ¶ 14, 989 A.2d 726.

[¶15] In *Dunning v. Dunning*, we emphasized that a clear error analysis necessarily requires our review of the entire evidence, reasoning, "[T]his record contains such evidentiary weight and it has led us to such convictional certainty that we do not feel able to escape the view that the trial court has failed to make a sound survey of or to accord the proper effect to all of the cogent facts . . . ." 495 A.2d 821, 824 (Me. 1985) (alteration omitted) (quotation marks omitted). Here, although not included in the court's findings of fact, Tammy testified at the hearing that Nicole "can be trusted [with Ella]. She is a good mother." Moreover, after Nicole left Tammy's house with Ella—during the "roughly two months" leading up to the hearing—Tammy never exercised her right to take custody of Ella. Tammy also testified that Nicole's living situation is adequate for Ella's one-year-old brother and that she has never petitioned for guardianship of the brother. Furthermore, Nicole testified—and Tammy does not dispute—that she is currently working at a hospital and has a lead on an additional job at a medical staffing agency. Nicole also testified that she moved in with her current boyfriend after having known him for roughly six weeks. The boyfriend has full custody of a seven-year-old son and according

to Nicole, the "gluing stone of our relationship" was the fact that "[o]ur kids got along great. We loved how they interacted with each other . . . ." According to Nicole, it is her intention to remain with the boyfriend, but if they were to separate, she would have enough money to rent a new apartment and would keep Ella in the same school.

[¶16] In light of these positive developments, the fact that Nicole is living with the boyfriend after having known him briefly—seemingly the basis for the GAL's concern that she has not spent a sufficient period of time in her current environment—is not the "exceptional circumstance[] affecting [Ella]" that would justify an intrusion into their parent-child relationship. *Pitts*, 2014 ME 59, ¶ 12, 90 A.3d 1169. Thus, given the "evidentiary weight" contained in the record that Nicole was a fit parent at the time of the hearing, *Dunning*, 495 A.2d at 824 (quotation marks omitted), we are left with the "definite and firm conviction" that no court on review of the entire evidence could find otherwise.[4] *See United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

---

[4] Because we determine that the court erred in finding parental unfitness as to Nicole, it is not necessary to address the best interest element of the guardianship analysis. *See In re Scott S.*, 2001 ME 114, ¶ 20, 775 A.2d 1144 ("Because of the fundamental importance of parents' rights to raise and nurture their children, the State may not interfere with those rights absent compelling overriding interests. Accordingly . . . the State may not remove children from a parent's care solely on the basis of the best interests of the children.").

The entry is:

> Judgment vacated. Remanded with instructions to terminate the guardianship order. Mandate to issue forthwith.

---

Wayne Doane, Esq. (orally), Exeter, for appellant Nicole Grenier

Kenneth W. Fredette, Esq. (orally), Newport, for Tammy Hopkins & Marlyn Hopkins

Penobscot County Probate Court docket number 2016-381
FOR CLERK REFERENCE ONLY